564

87 A.3d 285

Steven P. PASSARELLO, Administrator of the Estate of Anthony J. Passarello, Deceased, and Steven P. Passarello and Nicole M. Passarello, Husband and Wife,

v.

Rowena T. GRUMBINE, M.D. and Blair Medical Associates, Inc.

Appeal of Blair Medical Associates, Inc.

Steven P. Passarello, Administrator of the Estate of Anthony J. Passarello, Deceased, and Steven P. Passarello and Nicole M. Passarello, Husband and Wife

v.

Rowena T. Grumbine, M.D. and Blair Medical Associates, Inc.

Appeal of Rowena T. Grumbine, M.D.

Supreme Court of Pennsylvania.

Argued Nov. 28, 2012.

Resubmitted Dec. 27, 2013.

Decided Feb. 7, 2014.

566

568

John Wesley Jordan IV, Matis Baum O'Connor, Pittsburgh, for Blair Medical Associates, Inc.

Robert B. Hoffman, Eckert Seamans Cherin & Merlott, LLC, Harrisburg, for Pennsylvania Medical Society, Appellant Amicus Curiae.

Lynn Ellen Bell, Davies, McFarland & Carroll, P.C., Pittsburgh, Michael Christopher Hamilton, Pittsburgh, Maureen Murphy McBride, James C. Sargent Jr., Lamb McErlane, PC, West Chester, for Rowena T. Grumbine.

Donald Joseph Feinberg, Feinberg & Silva, Philadelphia, Clifford Alan Rieders, Pamela L. Shipman, Rieders, Travis, Humphrey, Harris, Waters & Waffenschmidt, Williamsport, for Steven P. and Nicole M. Passarello and the Estate of Anthony J. Passarello.

Rosalind T. Kaplan, Jarve Kaplan Granato, LLC, Philadelphia, for Pennsylvania Ass'n for Justice, Appellee Amicus Curiae.

Before CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, STEVENS, JJ.

## *OPINION*

Justice McCAFFERY.

We granted review in this medical malpractice case to consider whether the trial court properly gave an "error in judgment" jury instruction, *i.e.*, an instruction that physicians

are not liable for their "errors in judgment" when making medical decisions.

I

The Superior Court's opinion sets forth the factual background, as follows:

This matter arose out of the death of two-month-old Anthony Passarello, who died while under the care of defendant pediatrician Rowena T. Grumbine, M.D., and members of her staff at Blair Medical Associates, Inc. ["Blair Medical," Dr. Grumbine's employer]. Anthony's parents, Stephen and Nicole Passarello [Appellees], brought Anthony to Dr. Grumbine for multiple visits following his birth on May 31, 2001, and contacted Dr. Grumbine's office seven times during the week preceding his death on August 4, 2001. The relevant chronology of that final week appears in the record as follows.

On July 27, [Appellees] brought Anthony to Dr. Grumbine's office concerned about the state of his health, reporting that he would take only 4 ounces of formula rather than the customary 6 or 7, that he was crying after feedings, and that he had a slight cough.

On July 29, [Appellees] called Blair Medical Associates' "tele-a-nurse" phone service and reported that Anthony had experienced projectile vomiting, had been fussy for the previous five days, and was tired after feeding. They reported those same symptoms later that day when they spoke with Dr. Grumbine by telephone. Dr. Grumbine suggested that time that Anthony might suffer from pyloric stenosis and noted that a barium swallow test might be indicated. However, subsequent developments discounted that potential diagnosis and Dr. Grumbine did not order the test.

On July 30, [Appellees] took Anthony for an office visit with Dr. Grumbine and reported that Anthony continued to have a slight cough and had vomited two to three times daily for the preceding four to five days.

Two days later, on August 1, during a follow-up office visit with Dr. Grumbine, [Appellees] reported that Anthony was fussy, vomiting at times, was not sleeping, exhibited pain while feeding, and was wheezy afterward. Dr. Grumbine found Anthony's symptoms consistent with gastroesophogeal reflux and prescribed medications to treat that condition. She also immunized him for DPT, Polio, Haemophilus Influenza Type B, Hepatitis B, and Pneumococcus.

Thereafter, on August 2, [Appellees] called the tele-a-nurse service and reported that Anthony's formula consumption had dropped to three ounces that day, that he was fussy and not sleeping, and was screaming as if in pain. They also reported that he had wet only two diapers that day and had a fever of 101°F despite administration of Tylenol every four hours. Dr. Grumbine found Anthony's symptoms consistent with reactions to his immunizations of the previous day and concluded that he might also be in pain from acid reflux. Anthony's symptoms remained unabated and on the following day, August 3, [Appellees] took him to the emergency room at Altoona Hospital, where the attending physician, Dr. Holly Thompson, found him to be in severe respiratory distress and confirmed that his heart rate had fallen dangerously low. Despite intubation and the use of a ventilator as well as other supportive measures, Anthony died during the early morning hours of August 4. Postmortem examination established the cause of death to be diffuse acute viral myocarditis, a viral infection of the heart muscle.

*Passarello v. Grumbine,* 29 A.3d 1158, 1160–61 (Pa.Super.2011).

Appellees commenced an action against Dr. Grumbine, a second doctor, and Blair Medical on July 28, 2003, and the case remained in litigation until entry of a defense verdict on April 29, 2009 [1] (collectively, Dr. Grumbine and Blair Medical shall be referred to hereafter as "Appellants"). At trial, Appellees presented expert testimony that Dr. Grumbine had deviated from the standard of care by failing to refer Anthony

---

1. The action against the second physician ended when that physician was granted summary judgment by the trial court.

for further testing on August 2.[2] Appellants responded with expert testimony that Dr. Grumbine had complied with the standard of care because she had chosen an alternate diagnosis "that fit the symptoms and made sense." Notes of Testimony (N.T.) Trial, 4/24/09, at 36; R.R. 431a. As the trial neared its close, Dr. Grumbine and Blair Medical each submitted proposed points for charge, including differing versions of the "error in judgment" charge. Blair Medical's proposed version of the charge read: "Under the law, physicians are permitted a broad range of judgment in their professional duties and physicians are not liable for errors of judgment unless it is proven that an error of judgment was the result of negligence." Points for Charge of Blair Medical Associates at 3, ¶ 7. Dr. Grumbine's proposed version of the charge stated, "If a physician employs the required judgment and care in reaching his or her diagnosis, the mere fact that he or she erred in the diagnosis will not render them liable, even though their treatment was not proper for the condition that actually existed." Points for Charge of Rowena Grumbine, M.D. at 7, ¶ 17.

The trial judge held a charging conference and stated that all of Blair Medical's proposed points for charge would "either be read or covered." N.T. Trial, 4/24/09, at 57; R.R. at 452a. However, the judge did not say exactly which, if any, of Blair Medical's proposed charges it would actually read to the jury, and counsel for Appellees did not raise any objection at that time. The judge then proceeded to discuss Dr. Grumbine's points for charge in detail, and when the judge addressed her proposed "error in judgment" charge, counsel for Appellees objected that the instruction would not be proper in this case. *See id.* at 85–86; R.R. at 480a–81a. However, the judge did not rule on the objection at that time. Because the conference was taking place on a Friday, the judge adjourned the conference and reconvened it on the following Monday morning, at which time Appellees' counsel again objected to an "error in judgment" charge.

2. *See* Notes of Testimony (N.T.) Trial, 4/20/09, at 44, R.R. 63a; N.T. Trial, 4/22/09, at 40, R.R. 279a.

Following the charging conference, the trial judge instructed the jury. It first instructed the jury on the objective standard of professional negligence, explaining that "a physician [whose] conduct falls below the standard of care is negligent." N.T. Jury Charge, 4/27/09, at 13; R.R. at 529a. The judge told the jury that it was not to "rely on hindsight" and consider a "disastrous result" to be "proof of negligence," but should rather "determine whether [Dr. Grumbine] failed to have and exercise ordinary skill, care, and knowledge of a specialist, in this case a pediatrician, in the circumstances which were present at the time." *Id.* at 35; R.R. at 551a. The judge then read Blair Medical's version of the "error in judgment" charge, and instructed the jury, "Under the law[,] physicians are permitted a broad range of judgment in their professional duties and physicians are not liable for errors of judgment unless it's proven that an error of judgment was the result of negligence." *Id.* at 35–36; R.R. at 551a–52a.

Immediately following the jury charge, the judge called counsel to sidebar to entertain objections to the charge. Appellees' counsel said he was renewing the objections he had made during the Friday charging conference as well as the objection he had raised during the charging conference that morning to the "error in judgment" instruction. Counsel then asked the judge, "[D]o I have those objections preserved, Your Honor?" The judge replied, "It's my understanding you do." *Id.* at 37; R.R. at 553a. The judge denied the objections, and the jury retired to deliberate; it later returned a verdict in Appellants' favor.

Appellees filed timely post-trial motions arguing, among other things, that the trial court had improperly given an "error in judgment" charge. Approximately one month after Appellees had filed their post-trial motions—and before the trial court ruled on post-trial motions—the Superior Court filed its decision in *Pringle v. Rapaport,* 980 A.2d 159 (Pa.Super.2009) (*en banc*). In that case, the trial court had given an "error in judgment" charge very similar to the one given here, instructing the jury that, "Under the law, physicians are permitted a broad range of judgment in their professional

duties, and they are not liable for errors of judgments [sic] unless it is proven that an error of judgment was the result of negligence." *Id.* at 164. The Superior Court in *Pringle* held that such an instruction should never be given because it "wrongly suggests to the jury that a physician is not culpable for one type of negligence, namely the negligent exercise of his or her judgment." *Id.* at 173. The court also stated that the instruction incorrectly "injects a subjective element into the jury's deliberations" because it "improperly refocuses the jury's attention on the physician's state of mind at the time of treatment," rather than on the standard of care, which is objective. *Id.* at 174. The court also pointed out that the Committee on Proposed Standard Civil Jury Instructions had, since 1981, rejected the charge as confusing, and that this Court had never decided whether the charge was appropriate.[3]

Approximately one year after the Superior Court decided *Pringle,* the trial court denied Appellees' post-trial motions and entered judgment in Appellants' favor. Appellees appealed to the Superior Court, which vacated and remanded. *Passarello, supra.* The Superior Court first concluded that Appellees had properly preserved their challenge to the "error in judgment" charge, stating that the trial court had had "an opportunity to assess its use of the instruction." *Id.* at 1163 n. 1. The court then applied *Pringle,* rejecting Appellants' argument that it should not "retroactively" do so because *Pringle* had been decided after Appellees had filed their post-trial motions.

Appellants then each filed individual Petitions for Allowance of Appeal, which we granted to review the following issues:

(1) Is it ever within the discretion of a trial judge to instruct the jury in a medical malpractice case that a doctor is not liable for a nonnegligent error of judgment?

---

3. In coming to its decision, the Superior Court attempted to reconcile conflicting opinions from that court, some of which had affirmed the trial court's refusal to give an error of judgment charge in medical malpractice cases and some of which had affirmed the propriety of the trial court giving an error of judgment charge in medical malpractice cases. *See Pringle, supra* at 171–72 (citing cases).

(2) Was the Supreme Court's retroactive application to the present case of the rule it announced in *Pringle v. Rapaport* [,] 980 A.2d 159 (Pa.Super.2009) (*en banc*), contrary to the Supreme Court's decision in *Cleveland v. Johns–Manville Corp.*[,] 547 Pa. 402, 690 A.2d 1146 (1997)?

*Passarello v. Grumbine,* 615 Pa. 585, 44 A.3d 654 (2012) (Blair Medical's appeal); and

(1) Whether the Superior Court violated longstanding precedent and deviated from existing law by granting [Appellees] a new trial based on a purportedly faulty "error in judgment" jury instruction in circumstances where [Appellees] failed to object to the instruction at trial, and, accordingly, failed to preserve the issue for appeal.

(2) Whether the Superior Court contravened controlling precedent by not considering a trial court's jury charge in its entirety to determine whether a trial court's reference to the error-in-judgment concept was harmless and the charge in its entirety was a correct statement of law.

(3) Whether the Superior Court contravened controlling precedent by relying on its decision in *Pringle v. Rapaport,* [ ] 980 A.2d 159 (Pa.Super.2009) to vacate a verdict in circumstances where the instruction given by the trial court was a proper statement of the law even assuming *Pringle* applied.

*Passarello v. Grumbine,* 615 Pa. 588, 44 A.3d 656 (2012) (Dr. Grumbine's appeal).

Appellees correctly note that these five issues, *as developed* by Dr. Grumbine and Blair Medical, have areas of significant overlap, although the issues are stated differently by those parties. Specifically, Dr. Grumbine's argument for her Issue 3 overlaps and parallels Blair Medical's development of both of its two issues. Part of Dr. Grumbine's argument in her issue 2 also has echoes in Blair Medical's arguments. Thus, we shall address the issues accepted for appeal in a logical fashion, starting with Dr. Grumbine's argument that Appellees waived their objection to the "error in judgment" charge.

II

█ Dr. Grumbine, but not Blair Medical, argues that Appellees waived their challenge to the error in judgment charge by only objecting during the charging conference to Dr. Grumbine's version of the charge, in light of the fact that the trial court gave Blair Medical's version of the "error in judgment" charge, not Dr. Grumbine's. Dr. Grumbine further contends that Appellees waived their argument on appeal that the error in judgment charge should *never* be given by making only the narrower argument at trial that the instruction was not proper in this case.[4]

█ Dr. Grumbine's first argument, that Appellees had failed to object to Blair Medical's point for charge as well as her own point for charge on "error in judgment," rings hollow for several reasons. First, Appellees here alleged essentially a series of acts of negligence—those of Dr. Grumbine—while co-defendant Blair Medical was sued only in an agency capacity. Thus, any error in judgment charge pertained to the singular behavior of Dr. Grumbine, and, accordingly, only one objection was necessary for the trial court to be placed on notice as to possible defects in an error in judgment charge pertaining to that party's behavior. The requirement for a timely and specific objection at trial is to "ensure that the trial judge has a chance to correct alleged trial errors." *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114, 116 (1974). Here, the trial judge was given just such an opportunity (indeed several opportunities) by Appellees' objections on the record.

Further, we cannot agree with Dr. Grumbine's argument that her error in judgment point for charge and that of Blair Medical were different creatures, "entirely distinct,"[5] requiring that an objection be lodged as to each. Dr. Grumbine

4. Whether Appellees waived their challenge to the jury instruction presents a question of law for which our standard of review is *de novo;* our scope of review is plenary. *Pocono Manor Investors, LP v. Pa. Gaming Control Bd.*, 592 Pa. 625, 927 A.2d 209, 216 (2007); *Straub v. Cherne Indus.*, 583 Pa. 608, 880 A.2d 561, 566 n. 7 (2005).

5. Dr. Grumbine's Brief at 11.

asserts that her point for charge *"made no reference to a physician being liable for negligence,"* whereas Blair Medical's point for charge stated "that a physician *is liable* for an error in judgment if that error in judgment *is caused by negligence.*" Dr. Grumbine's Reply Brief at 3 n.3 (emphasis in original). Setting aside the fact that the essential question in a medical malpractice action is whether a health care provider was negligent, as to which question the jury would necessarily be instructed by the court, our view of Dr. Grumbine's proposed point for charge is that it actually incorporated the concept of negligence by using other language. Dr. Grumbine's proposed charge states: *"If a physician employs the required judgment and care in reaching his or her diagnosis,* the mere fact that he or she erred in the diagnosis will not render them liable, even though their treatment was not proper for the condition that actually existed." Points for Charge of Rowena Grumbine, M.D. at 7, ¶ 17 (emphasis added).

There is no substantive difference between Dr. Grumbine's error in judgment point for charge and that of Blair Medical. Indeed, the trial court considered the two instructions to be "equivalent." *See* Trial Court Opinion, disposing of Appellees' request for post-trial relief, dated September 7, 2010, at 2. Thus, we see no merit to Dr. Grumbine's contentions regarding waiver.

Objections to jury instructions must be made before the jury retires to deliberate, unless the trial court specifically allows otherwise. Pa.R.C.P. 227(b). The record here makes it clear that Appellees lodged their objections before the jury began its deliberations. As noted above, Appellees' counsel told the court before the jury commenced deliberating that he wanted to preserve both the objections he had made during the charging conference on the previous Friday, and the objection to the "error in judgment" charge he had raised that morning. Appellees' timely objection satisfied Rule 227(b)'s requirements. Indeed, the trial court told Appellees' counsel that it was its understanding that the objection was preserved.

Accordingly, we conclude that there is no basis for Dr. Grumbine's argument that the import, nature, and language of her proposed point for charge and those of Blair Medical's proposed point for charge required Appellees to object to *both* proposed points for charge.

Dr. Grumbine's second argument is that Appellees preserved an objection only to the application of the error in judgment to the facts of the instant case, and not to an error in judgment charge generally. In their post-trial motions, Appellees asserted that they had objected at trial to an error of judgment charge for two reasons. The first reason was that the instant case involved a failure to test for a diagnosis, rendering the charge inapplicable. The second reason was that the trial court should have given the charge relating to medical malpractice cases found in the Pennsylvania Suggested Standard Jury Instructions, which had specifically rejected the error in judgment instruction. Plaintiffs' Motion for Post–Trial Relief, filed May 5, 2009, at 2–3. The trial transcript, however, suggests that when Appellees first made their objection during the pre-charge conference, they were relying only on the first reason. *See* N.T. Trial, 4/24/09, at 86; R.R. at 481a, comments of Appellees' attorney ("There is specific law in medical malpractice cases dealing [with] when the error of judgment charge needs to be given and when it [does not]."). Unfortunately, there apparently was no transcription of the continuation of the pre-charge conference that occurred three days later, when the issue of the appropriateness of the error in judgment charge was purportedly also discussed among counsel and the trial judge. *See* Appellees' Brief at 23 n.7.

It is clear that Appellees objected to the error in judgment charge at least as it applied to the instant case. Additionally, after such objection—and prior to the entry of the judgment in the instant case—the Superior Court rejected error of judgment charges as inappropriate in *all* medical malpractice cases. As we determine *infra*, Appellees were entitled to present argument based on *Pringle's* alteration and clarification of then-existing law. Accordingly, we conclude that Appellees did not waive their objection and were entitled to

argue on appeal that *Pringle* supported the grant of a new trial.

## III

### A

On the merits, Dr. Grumbine and Blair Medical argue several points challenging the Superior Court's (1) blanket prohibition of error in judgment instructions in medical malpractice cases; and (2) determination that a new trial was required in this case as a consequence of the error in judgment instruction given here by the trial judge.

Blair Medical contends that we should abrogate the relevant holding of *Pringle* because "error in judgment" instructions properly instruct the jury on the principle that "if a physician employs the required judgment and care in arriving at his diagnosis, the mere fact that [the physician] erred in his diagnosis will not render him [or her] liable, even though his treatment is not proper for the condition that exists...." Blair Medical's Brief at 10, quoting *Smith v. Yohe*, 412 Pa. 94, 194 A.2d 167, 170–71 (1963). Blair Medical observes that this Court has never considered the concept of a physician's error in judgment in the context of a jury charge, but that several Superior Court cases have upheld error in judgment charges. In one case, the court determined that a "mistake of judgment" instruction was appropriate in a case involving a difficult diagnosis because such instruction "properly directed the jury to base its verdict on whether a physician had failed to follow proper medical procedure and not infer a breach of the standard of care merely from [the patient's] unfortunate result." *Havasy v. Resnick*, 415 Pa.Super. 480, 609 A.2d 1326, 1336 (1992). In another case, the appellant had argued that the trial judge's "mere error of judgment" charge was improper because the evidence showed that the defendant physician had not exercised *any* medical judgments. The Superior Court determined that the appellant's argument was "puzzling, at best," in that the evidence apparently demonstrated that the physician had made a series of decisions ("medical

judgments") in rendering care to the patient, which the Superior Court detailed. That court then asserted that after its review of the record, it had come to the conclusion that the jury charge was "clear, accurate, and more than adequate." *Blicha v. Jacks*, 864 A.2d 1214, 1219-20 (Pa.Super.2004).[6]

Blair Medical next asserts that in *Pringle*, the Superior Court had a valid reason for determining that the trial court's particular jury instruction in that case would have been confusing for a jury, thus providing a basis for rejecting—in that case—the propriety of an error in judgment instruction. By contrast, Blair Medical asserts, the relevant charge in the present case is distinguishable, was accurate as a matter of law, and was not of a nature that the jury would find confusing. Specifically, Blair Medical notes that in *Pringle*, the jury was relevantly charged: *"The rule requiring a physician to use his best judgment does not make a physician liable for a mere error in judgment provided he does what he thinks best after careful examination."* Blair Medical's Brief at 12-13, quoting *Pringle, supra* at 164 (emphasis by the Superior Court). However, in the present case, Blair Medical notes that the jury was relevantly charged: "Under the law[,] physicians are permitted a broad range of judgment in their professional duties and physicians are not liable for errors of judgment unless it's proven that an error of judgment was the result of negligence." Blair Medical's Brief at 13, quoting N.T. Jury Charge, 4/27/09, at 35-36; R.R. at 551a-52a. Based on the statements it highlights from the jury charges in the two cases, Blair Medical asserts that the jury in the instant case was directly informed that a physician would be liable for a negligent exercise of judgment, but that the jury in *Pringle* was not so instructed.[7] Further, Blair Medical asserts that

6. The *en banc* panel of the Superior Court in *Pringle* cited *Havasy* and *Blicha* as examples of the line of cases that the court would, thereafter, no longer be following. *Pringle, supra* at 171-72.

7. Blair Medical neglects to mention, however, that the trial court in *Pringle* also gave the identical instruction that the trial court gave in the instant case, to wit, "Under the law, physicians are permitted a broad range of judgment in their professional duties, and they are not liable

the jury instruction in the present case did not in any fashion invite the jury to consider Dr. Grumbine's motivations or subjective thoughts in connection with evaluating the doctor's exercise of her judgment; rather, the jury was firmly instructed on the objective elements of the negligence that Appellees were required to prove.

Finally, Blair Medical asserts that a "blanket proscription" of error in judgment instructions in all medical malpractice jury instructions is error, because such instructions may address important aspects of certain medical malpractice cases. Blair Medical argues that a properly crafted error in judgment charge (which Blair Medical asserts was made in the instant case) serves to inform the jury that a doctor may make reasonable decisions that, in hindsight, might be proved to be "wrong." Blair Medical's Brief at 14.

Dr. Grumbine echoes Blair Medical's argument with the contention that *"Pringle's* [relevant] holding is wrong-headed as a matter of law and should be overturned." Dr. Grumbine's Brief at 27. In support, Dr. Grumbine posits that this Court had "listed the 'error in judgment' concept as one of the eight 'well settled principles in [the medical malpractice] area of the law.' " *Id.* at 28, quoting *Yohe, supra* at 170–71. Dr. Grumbine also agrees with Blair Medical that the reasons supporting the grant of a new trial in *Pringle* were not present in the instant case, rendering erroneous the Superior Court's application of *Pringle* to this case.[8]

for errors of judgment unless it is proven that an error of judgment was the result of negligence." *See Pringle, supra* at 164.

8. *Amicus curiae,* the Pennsylvania Medical Society, has submitted a brief in support of Blair Medical and Dr. Grumbine. This brief expands upon the arguments made by Blair Medical and Dr. Grumbine that a properly phrased error in judgment charge is sometimes necessary to inform the jury that a doctor could rationally make reasonable, non-negligent decisions that, in hindsight, proved to be incorrect so far as the patient's outcome is concerned. This argument is based on the premise that the practice of medicine is oftentimes an "art" requiring a physician to make a series of decisions based on symptomology. *Amicus* contends that a properly worded error in judgment instruction, rather than confusing a jury, would actually help clarify this critical aspect of medical practice and would remain true to the instruction's

Primarily, however, Dr. Grumbine contends that the Superior Court ignored longstanding precedent by failing to consider the jury charge in its entirety in order to determine whether the alleged error was prejudicial to the losing party before granting a new trial. *See Reilly v. SEPTA*, 507 Pa. 204, 489 A.2d 1291, 1305 (1985) ("In reviewing a trial judge's charge, the proper test is not whether certain portions taken out of context appear erroneous. We look to the charge in its entirety, against the background of the evidence in the particular case, to determine whether or not error was committed and whether that error was prejudicial to the complaining party."); *Schmidt v. Boardman Co.*, 958 A.2d 498, 515 (Pa.Super.2008), *aff'd on other grounds*, 608 Pa. 327, 11 A.3d 924 (2011) (cited by Dr. Grumbine and quoting same). Dr. Grumbine argues that the Superior Court violated this precedent by simply singling out two purportedly offending sentences (pertaining to the error in judgment instruction) out of a 50-page typewritten charge as the basis for declaring a new trial, rather than examining the entire charge to determine whether these two sentences were so highly prejudicial to Appellees as to warrant a new trial. To illustrate her point, Dr. Grumbine quotes the far more extensive language from the trial court's charge devoted to the concept of professional negligence and the standard of care, to which no objection was lodged by Appellees. Along these lines, Dr. Grumbine asserts that the jury instructions, as a whole, correctly informed the jury that a physician is not liable for non-negligent exercises of judgment. Thus, Dr. Grumbine asserts that a new trial should not have been granted because "the trial court's *entire* [jury] instruction was a fair statement of Pennsylvania law." Dr. Grumbine's Brief at 23 (emphasis in original).

Appellees respond first to Dr. Grumbine's argument that the Superior Court erred by focusing solely on the trial court's error in judgment instruction without considering the jury charge in its entirety by contending that the Superior Court had, in fact, considered the jury charge in its entirety and had

original purpose to make explicit that an adverse outcome for a patient is not, on its own, a basis for a finding of negligence.

come to the conclusion that the charge, thus viewed, *had* prejudiced Appellees, thus warranting a new trial. Appellees cite several portions of the Superior Court's opinion in support of their argument. Appellees first note that the Superior Court agreed with Dr. Grumbine that the trial court had given a correct instruction on the objective standard of care and that there were distinctions between the charge given in the present case and the "more extensive" error in judgment charge given in *Pringle*. *Passerello, supra* at 1167. However, even after weighing those factors, the Superior Court determined: "[T]he court's charge nevertheless introduced Dr. Grumbine's state of mind as an element for the jury's consideration. In so doing, the charge attenuated the objective standard of care imposed by Pennsylvania law and obfuscated the manner in which the jury might properly weigh the evidence." *Id.*

Appellees note that the Superior Court's reasons for its conclusion included that court's viewing the jury charge in the context of Dr. Grumbine's closing argument, which the court determined had interjected a subjective approach to the evidence. Appellee's Brief at 36–37, citing *Passerello, supra* at 1167, and citing to the closing arguments of Dr. Grumbine. Appellees observe that the Superior Court noted the interrelationship between Dr. Grumbine's stated theory of the case and the trial court's charge to the jury as follows:

[I]n this case, the trial court instructed the jury on Pennsylvania's objective standard of care, but then, at the request of counsel for Dr. Grumbine, gave the following instructions:

Now, I've been given points of law by counsel. Some of these points, most of the points frankly I've—I've already covered and I'm gonna cover the points that counsel has given me where I—I conclude that they ... are essential to their theory and are a proper statement of law.

*Passerello, supra* at 1167, quoting N.T. Jury Charge, 4/27/09, at 30; R.R. at 546a.

Based on the above statements and analysis of the Superior Court in this case, Appellees argue that not only did the Superior Court correctly view the error in judgment instruc-

tion in the context of the entire charge to the jury, but that it also correctly concluded that the error in judgment instruction, within this context, was not harmless as a matter of law.

Appellees next offer several grounds for arguing that *Pringle* was correct in holding that error in judgment instructions should never be given in medical malpractice cases. Appellees contend that the *en banc* Superior Court in *Pringle* properly addressed the need to resolve the split that had developed among Superior Court panels on the propriety of ever giving an error in judgment instruction, and further needed to ensure that juries are given instructions that do not have a tendency to mislead or confuse the material issues that juries are asked to decide. Appellees highlight the analysis of the Committee on Proposed Standard Civil Jury Instructions, several pre-*Pringle* decisions of the Superior Court, and decisions from the courts of other jurisdictions, all of which have concluded that the error in judgment charge is inappropriate because of its propensity to mislead or confuse juries and to interject a "subjective element" into deliberations that are meant to analyze facts by objective standards. Further, Appellees assert, contrary to Appellants' positions, that this Court has never endorsed giving an error in judgment instruction. Rather, they argue that to the extent this Court has discussed the concept of "error in judgment," it has done so only in the context of legal discussion, without manifesting any expectation that statements regarding complex matters of legal analysis would be directly used as part of the language of a jury instruction. *See, e.g., Yohe, supra.*

## B

Our proper standard and scope of review of the issues raised by Appellants, with respect to error in judgment charges, the specific charge given in this case, and whether a new trial is warranted here, are as follows:

In examining jury instructions, our scope of review is limited to determining whether the trial court committed a clear abuse of discretion or error of law controlling the outcome of the case. Error in a charge is sufficient ground for a new

trial if the charge as a whole is inadequate or not clear or has a tendency to mislead or confuse rather than clarify a material issue. Error will be found where the jury was probably [misled] by what the trial judge charged or where there was an omission in the charge. A charge will be found adequate unless the issues are not made clear to the jury or the jury was palpably misled by what the trial judge said or unless there is an omission in the charge which amounts to a fundamental error. In reviewing a trial court's charge to the jury[,] we must look to the charge in its entirety. Because this is a question of law, this Court's review is plenary.

*Quinby v. Plumsteadville Family Practice, Inc.,* 589 Pa. 183, 907 A.2d 1061, 1069–70 (2006) (citations, quotation marks, and ellipses omitted).

## C

The initial substantive issue raised by Appellants in this case is whether an "error in judgment" jury instruction for at least *some* medical malpractice cases should remain a viable jury instruction in this Commonwealth. *Pringle, supra,* determined that this instruction should no longer be given, and that court subsequently applied *Pringle* to the instant case to reverse the trial court and remand for a new trial. A review of *Pringle's* analysis and holding would therefore be salutary.

In *Pringle,* the Superior Court began its analysis with a history of the physician's standard of care in Pennsylvania jurisprudence and the role of "judgment" in defining that standard. The court noted that in several medical malpractice cases decided in the latter part of the nineteenth and the early part of the twentieth centuries, this Court had used the phrase "error in judgment" in an "effort to explain the interrelated notions that a doctor does not promise a cure and that mistakes by doctors are not necessarily the result of negligence." *Id.* at 165–66, citing and quoting *Williams v. LeBar,* 141 Pa. 149, 21 A. 525 (1891); *English v. Free,* 205 Pa. 624, 55 A. 777 (1903); and *Ward v. Garvin,* 328 Pa. 395, 195 A. 885 (1938). However, the Superior Court noted that in *Ward,* this

Court relied upon *Duckworth v. Bennett*, 320 Pa. 47, 181 A. 558 (1935), a "two schools of thought" case, as authority for the proposition that physicians will not be held liable for "mere errors in judgment." The "two schools of thought" doctrine holds that a physician will not be liable for choosing, in the exercise of her or his judgment, one of two or more *accepted* courses of treatment where *competent* medical authority is divided as to the proper course. *See Pringle, supra* at 166–67 (citing and quoting *Duckworth, supra* at 559). The Superior Court concluded that the "two schools of thought" doctrine does not apply to cases where, as in *Pringle* and the instant case, there has been a misdiagnosis. *Id.* at 166.

The Superior Court then observed that this Court, twenty-four years after *Duckworth,* set forth its "first substantive restatement of the physician's standard of care" in *Donaldson v. Maffucci,* 397 Pa. 548, 156 A.2d 835 (1959). In that case, we engaged in no discussion concerning whether a physician's conduct should be viewed in the context of whether she or he had made an "error in judgment." Rather, we observed that the "well-settled" standard of care required of a physician or surgeon is whether the physician employed "the required skill and knowledge" necessary "to exercise the care and judgment of a reasonable" person. *Id.* at 838.

The Superior Court then turned its attention to *Yohe, supra,* a case relied upon by Appellants herein. In *Yohe,* this Court cited eight principles of medical malpractice law, one of which was that "a physician is not liable for an error of judgment," citing to *LeBar, supra; Duckworth, supra;* and *Ward, supra. Yohe, supra* at 170. However, in *Yohe,* we rejected the physician's argument that his misdiagnosis of the plaintiff was an error in judgment, based on the record in that case. As the Superior Court noted in its *Pringle* decision, we relevantly held:

Dr. Yohe urges that, even if he should have and did not take X-rays, such constituted an error of judgment for which he is not liable. In our opinion, there is a vast difference between an error of judgment and negligence in the collection and securing of factual data essential to arriving at a

proper conclusion or judgment. If a physician, as an aid to his diagnosis, *i.e.* his judgment, does not avail himself of the scientific means and facilities open to him for the collection of the best factual data upon which to arrive at his diagnosis, the result is not an error of judgment but negligence in failing to secure an adequate factual basis upon which to support his diagnosis or judgment.

*Id.* at 168, quoting *Yohe, supra* at 173.

The Superior Court then observed that in the subsequent case of *Incollingo v. Ewing,* 444 Pa. 263, 282 A.2d 206 (1971), this Court made no mention of "error in judgment" as a consideration relevant to determining a physician's standard of care. Rather, after rejecting the physician's argument that he could not be held negligent because his failure to pay attention to written warnings associated with a drug and his prescribing the drug over the telephone without having seen the patient was an accepted practice among his local physicians, this Court emphasized that the standard of care of physicians in Pennsylvania was an objective one. That is, "physicians must have and employ the same skill and knowledge typically used by physicians in the medical profession, and must keep themselves informed of contemporary developments in the profession." *Pringle, supra* at 170, citing *Incollingo, supra* at 217.

The Superior Court next observed that in 1981, ten years after *Incollingo,* the Committee on Proposed Standard Civil Jury Instructions issued its first set of Proposed Standard Civil Jury Instructions. The Committee established a basic instruction for a physician's standard of care in a medical malpractice case that remains in effect today: "A physician must have the same knowledge and skill and use the same care normally used in the medical profession. A physician whose conduct falls below this standard of care is negligent." Pa. SSJI (Civ) 14.10 (4th ed. 2011). Since 1981, the Committee's standard of care instruction has never contained a reference to a physician's judgment or included any "error of judgment" language. Indeed, as the Superior Court noted, the Committee's omission of "error of judgment" language initially was, and remains, intentional. The Superior Court

quoted the following excerpts from the Committee's explanation:

There is no reference to a physician's "judgment" in this instruction for the following reasons.... The focus, under Pennsylvania law, is on whether the physician's conduct comported [with] the requisite standard of care. Simply put, if a physician does not "exercise reasonable care," that physician will not be insulated from liability based on the fact that this failure constituted a "mere error in judgment," or what he or she thought "best after a careful examination." Conversely, if a physician does "exercise reasonable care," that physician will generally not be liable, notwithstanding that he or she committed a "mere error in judgment," or failed to do what he or she thought "best after a careful examination." In either case, such factors are but elements of the overarching concept of due care. Clearly, the use of phrases regarding mistakes or errors in judgment, best judgment, and the like, in the decisional law of this Commonwealth, are meant to help illustrate the parameters of the standard of care of physicians, and are not meant to pose additional requirements for defendants, on one hand, or to undermine the bedrock "reasonable care" requirement on the other. However, the inclusion of such phrases in jury instructions seems unlikely to serve that purpose. To the contrary, such phrases, at worst, risk misstating the law. At best, they seem unnecessarily circular in form. In any event, such language seems far more likely to mislead and confuse the jury rather than to enlighten it.

*Pringle, supra* at 170–71, quoting Pa. SSJI (Civ.) 11.01 (2009) (Subcommittee Note) (with internal citations omitted).[9]

The Superior Court thus observed that, "[f]or these reasons, the Committee determined that the principle expressed by an "error of judgment" charge (*i.e.*, that a physician may make an error that does not rise to the level of a breach of the standard of care) is adequately covered in a jury charge by the basic

9. Pa. SSJI (Civ.) 11.01 was renumbered as Pa. SSJI (Civ.) 14.10 in 2010.

instruction on the professional standard of care." *Id.* at 171, citing to Pa. SSJI (Civ.) 11.01 (2009) at 3–4 (Subcommittee Note).

The Superior Court then conducted a survey of decisions from that court which either endorsed or rejected "error in judgment" instructions. *Id.* at 171–72, citing and discussing cases. In an effort to reconcile these apparently conflicting decisions, the Superior Court issued a ruling that would impact all medical malpractice cases in the Commonwealth. Noting that "the purpose of charging the jury is to clarify issues which the jurors must determine," [10] the court concluded that, with respect to the fundamental issue in medical malpractice cases of whether the defendant violated the applicable standard of care, an "error of judgment" instruction "is inherently confusing for juries and thus has no place in medical malpractice cases." *Id.* at 173. The court gave two reasons for its conclusion, as follows:

First, the "error of judgment" charge wrongly suggests to the jury that a physician is not culpable for one type of negligence, namely the negligent exercise of his or her judgment. This is simply untrue, since in all medical malpractice actions the proper focus is whether the physician's conduct (be it an action, a judgment, or a decision) was within the standard of care.... [A]fter a jury has been charged on the fundamental principles regarding a physician's standard of care, adding an "error of judgment" instruction only confuses, and does not clarify, the determinative issue regarding deviation from the standard of care. Second, the "error of judgment" charge wrongly injects a subjective element into the jury's deliberations. The standard of care for physicians in Pennsylvania is objective in nature, as it centers on the knowledge, skill, and care normally possessed and exercised in the medical profession. The "error of judgment" charge improperly refocuses the jury's attention on the physician's state of mind at the time of treatment, even though the physician's mental state is

10. *Pringle, supra* at 173, quoting *Machado v. Kunkel,* 804 A.2d 1238, 1243 (Pa.Super.2002).

irrelevant in determining whether he or she deviated from the standard of care. Furthermore, by directing the jury's attention to what the physician may have been thinking while treating the patient, the jury may also be led to conclude that only judgments made in bad faith are culpable—even though a doctor's subjective intentions while rendering treatment are likewise irrelevant to the issues placed before a jury in a medical malpractice case.

*Id.* at 173–74 (citation, quotation marks, and footnote omitted).

In arriving at these determinations, the Superior Court rejected arguments that our reference in *Yohe, supra,* to the principle that a physician's "error in judgment" will not necessarily render her or him liable for medical malpractice required a different result. The Superior Court concluded that (1) such reference in *Yohe* constituted nothing more than *obiter dicta;* (2) in *Yohe,* we in fact held that a physician's incorrect diagnosis, caused by a failure to order medically appropriate tests within the standard of care, could not be justified as an exercise of judgment; (3) even if the "error of judgment" statement in *Yohe* remains an accurate statement of "a nuance of Pennsylvania law," this fact does not lead to the result that the language should or may be employed for a jury charge because, as that court recognized, "[j]ust because an appellate court uses certain language in an opinion does not necessarily mean it is appropriate for a lay juror;" and (4) our Court has never held that an error of judgment charge is appropriate nor have we sustained a decision justifying the use of an error of judgment charge. (*Id.* at 174–75, quoting *D'Orazio v. Parlee & Tatem Radiologic Assocs. Ltd.,* 850 A.2d 726, 728 (Pa.Super.2004)). Additionally, the Superior Court observed that a "substantial number" of other jurisdictions have ruled that error in judgment instructions are inappropriate in medical malpractice cases. *Id.* at 172 n. 6–9 (citing cases).

Accordingly, for these several reasons, the Superior Court in *Pringle* held that (1) the inclusion of an error in judgment instruction in the trial court's jury charge in that case likely misled or confused the jury and, therefore, the trial court

committed an error of law that necessitated a new trial; and (2) error in judgment instructions should no longer be included in any medical malpractice jury charges.

## D

Appellants both challenge the validity of the Superior Court's conclusions in *Pringle,* and argue alternatively that, at the very least, these conclusions should be limited to the factual scenario of the jury charge in *Pringle* and not extended to the instant case, which, they contend, involved a trial with a differently worded jury charge. However, we conclude that some of the Superior Court's concerns regarding the dangers of the phrase "error in judgment," or like phrases, when given as an instruction to a jury that is asked to evaluate a possible breach of an objective standard of care—and which concerns are shared by this Court's Committee on Proposed Standard Civil Jury Instructions—have undeniable resonance.

Appellants argue that a properly worded "error of judgment" instruction is either necessary or useful to convey to the jury several principles. First among these is the principle stated in *Yohe, supra,* that "if a physician employs the required judgment and care in arriving at his diagnosis, the mere fact that [the physician] erred in his diagnosis will not render him [or her] liable, even though his treatment is not proper for the condition that exists. . . ." *Id.* at 170–71, quoted in Blair Medical's Brief at 10. Another principle reflected in an "error in judgment" instruction is that this instruction "properly direct[s] the jury to base its verdict on whether a physician [ ] failed to follow proper medical procedure and not to infer a breach of the standard of care merely from [the patient's] unfortunate result." *Havasy, supra* at 1336, quoted in Blair Medical's Brief at 10. As stated by *amicus curiae,* the Pennsylvania Medical Society, a properly phrased error in judgment charge may inform the jury that "medical judgments can prove to be incorrect yet conform to the standard of care." The Pennsylvania Medical Society's Brief at 12. *Amicus* further asserts that the "origin" of the error in judgment instruction is to make explicit that an adverse outcome for a

patient is not, on its own, a basis for a finding of negligence. *Id.* at 23, citing Joseph H. King, Jr., *Reconciling the Exercise of Judgment and the Objective Standard of Care in Medical Malpractice,* 52 Okla.L.Rev. 49, 57 (Spring 1999).

■ However, we do not interpret the holding in the instant case, or in *Pringle,* as finding fault with the *substance* underlying error in judgment instructions, but rather only with the *terminology* utilized, which the Superior Court concluded could confuse a jury by asking it, on the one hand, to determine whether a physician was negligent because of a failure to adhere to an objective standard of care, but also to consider, on the other hand, that the physician's *"error"* in the exercise of his or her *"judgment"* concerning an objective standard of care is not negligence. We shall discuss *infra* whether we believe there is potential for juror confusion arising from the phrase "error in judgment," or similarly employed phrases. What we observe now is that Appellants' arguments facially demonstrate that the essential principles that underlie error in judgment instructions are capable of being stated in a straightforward manner without incorporating phrases such as "error in judgment." As illustrated by Appellants' arguments, if a defendant desires an instruction that conveys the principle that an unfortunate result does not by itself establish negligence, he or she may request from the trial court an instruction, in the appropriate case, that an unfortunate result does not by itself establish negligence.[11] There is no need to resort to the use of ambiguous and problematic phrases such as "error in judgment" or "mistake in judgment." Indeed, one premise of the determination by this Court's Committee on Proposed Standard Civil Jury

11. In fact, in the instant case, the trial judge gave such a direct instruction:

> In determining whether a physician was negligent[,] you may not rely on hindsight to find that the doctor's treatment produced a bad outcome ... since an unexpected, unfortunate[,] or even disastrous results is not a proof of negligence. Rather, you must determine whether that physician failed to have and exercise ordinary skill, care, and knowledge of a specialist [—] in this case a pediatrician [—] in the circumstances which were present at the time.

N.T. Jury Charge, 4/27/09, at 35; R.R. at 551a.

Instructions to *not* include "error in judgment" or like instructions is that these instructions are simply a manner of illustrating the standard of care, but one with the potential to confuse a jury; they do not articulate additional or independent requirements of the standard of care. Pa. SSJI (Civ) 14.10 at 5, Subcommittee Note (4th ed. 2011). *See also, e.g.,* *Hirahara v. Tanaka,* 87 Hawai'i 460, 959 P.2d 830, 834 (1998) (explaining that an "error in judgment" instruction, with its propensity to confuse a jury, need not be given when such instruction "is adequately covered by alternate instructions that a physician's liability cannot be premised solely on a harmful result if he or she conforms to the professional standard of care.").

*Hirahara* is only one of the many cases from other jurisdictions that have determined that error in judgment or similar instructions are potentially confusing to juries and should not be given, except, perhaps, under limited circumstances. As explained by the Supreme Court of South Dakota, which had surveyed decisions from several jurisdictions ruling upon the propriety of error in judgment instructions:

It appears that there are essentially three prevailing views. Some courts categorically disallow the use of error in judgment or similar language in all circumstances. Others only allow the language if it is first determined that an evidentiary basis exists to do so, depending on the particular facts of the case [such as cases involving a "two schools of thought" theory]. The remaining courts permit the use of error in judgment or similar language, as long as the instruction does not contain terms such as "good faith" or "bona fide."

*Papke v. Harbert,* 738 N.W.2d 510, 517 (S.D.2007) (footnotes citing to cases omitted).

The latter instance referenced by the *Papke* court pertains to cases where a jury is instructed that a physician's "bona fide error in judgment," "honest error of judgment," "mere error in judgment," or a "good faith" medical decision, is not in itself negligence. Qualifiers such as "bona fide," "honest," or "mere" have been invariably determined by other courts to be erroneous when preceding the phrase "error in judgment,"

even where "error in judgment" instructions are held to be proper when thus not qualified. *See, e.g., Ezell v. Hutson,* 105 Wash.App. 485, 20 P.3d 975, 977 (App.Div.2001) (citing to cases and explaining "that such terms as 'honest' and 'good faith' erroneously suggest [to the jury that] the physician is liable only if he or she acted dishonestly or in bad faith."). Indeed, our review of case law from other jurisdictions illustrates the fact that "error in judgment" instructions may take a variety of forms (*e.g.,* "error of judgment;" "mistake in judgment") and be subject to countless embellishments by trial courts. *See generally* King, *Reconciling the Exercise of Judgment and the Objective Standard of Care in Medical Malpractice, supra;* George L. Blum, *Appropriateness of "Error in Judgment" Charge in Medical Malpractice Actions,* 6 A.L.R.6th 311 (2005).

Directly concerning the form of instruction in the instant case, however, jurisprudence from other jurisdictions appears to be weighted toward the determination that even unembellished "error in judgment" instructions are erroneous unless possibly confined to "two schools of thought" cases.[12] The analysis of the Oregon Supreme Court is representative:

> To state that a doctor is not liable for bad results caused by an error of judgment makes it appear that some types of negligence are not culpable. It is confusing to say that a doctor who has acted with reasonable care has nevertheless committed an error of judgment because untoward results occur. In fact, bad results notwithstanding, if the doctor did not breach the standard of care, he or she by definition has committed no error of judgment. The source of the problem is the use of the word "error." Error is commonly defined as "an act or condition of often ignorant or imprudent deviation from a code of behavior." Webster's Third New International Dictionary 772 (unabridged 1971). [Error in judgment instructions] could lead the jury to believe that a judgment resulting from an "ignorant or imprudent

12. As determined by the lower courts, the instant case is not a "two schools of thought" case, and Appellants do not contend otherwise.

deviation from a code of behavior" is not a breach of the standard of care.

The instruction given by the trial court was based on language concerning the exercise of "judgment" by doctors found in opinions of this court and the Court of Appeals. If the term "judgment" refers to choices between acceptable courses of treatment, then the term "error in judgment" is a contradiction in itself. Use of any acceptable alternative would not be an "error." Witnesses may continue to use terms such as "exercise of judgment." But the court should not instruct the jury in such terms; such instructions not only confuse, but they are also incorrect because they suggest that substandard conduct is permissible if it is garbed as an "exercise of judgment."

*Rogers v. Meridian Park Hospital,* 307 Or. 612, 772 P.2d 929, 933 (1989) (footnote omitted).

The South Dakota Supreme Court arrived at similar conclusions:

It is misleading to instruct a jury that physicians are not negligent when they make an error in judgment. As multiple courts have recognized, if the physician did not breach the applicable standard of care, then he or she by definition has not committed an error in judgment.

While the original intent of the instruction was to inform the jury that a doctor exercises medical judgment when treating a patient, and poor results would not necessarily mean negligence, that intent is not explained with the use of error in judgment or similar language. By using the term error in judgment, a jury could reasonably find a physician not liable in instances where that physician discloses that in hindsight, yes, he or she made a mistake, but that it was only an error in judgment. This is not the standard of care physicians are held to in South Dakota.

Because error in judgment or any similar language in no way further defines or explains the applicable standard of

care to the jury, we hold that such language should not be used in ordinary medical malpractice actions.

*Papke,* 738 N.W.2d at 527 (citations and footnotes omitted).[13]

In arriving at its own conclusions, our Superior Court in *Pringle* surveyed the above decisions and those of several other courts. *See Pringle,* 980 A.2d at 172 n. 6, citing to *Hirahara, supra; Rogers, supra;* and *Papke, supra;* as well as *Bickham v. Grant,* 861 So.2d 299, 303 (Miss.2003); *Yates v. Univ. of West Virginia Bd. of Trustees,* 209 W.Va. 487, 549 S.E.2d 681, 689–92 (2001); *Rooney v. Medical Center Hosp. of Vermont, Inc.,* 162 Vt. 513, 649 A.2d 756, 760 (1994); *Jefferson Clinic, P.C. v. Roberson,* 626 So.2d 1243, 1247 (Ala.1993); *Peters v. Vander Kooi,* 494 N.W.2d 708, 712 (Iowa 1993); and *Sleavin v. Greenwich Gynecology and Obstetrics, P.C.,* 6 Conn.App. 340, 505 A.2d 436, 440 (1986).[14] Again, our Superior Court determined that error in judgment instructions (1) wrongly suggest to the jury that a physician is not culpable for one type of negligence, namely the negligent exercise of his or her judgment; (2) wrongly inject a subjective element into the jury's deliberations, namely, an irrelevant focus on the physician's state of mind at the time of treatment; and (3) may lead a jury to conclude that only judgments made in bad faith are culpable, even though a doctor's subjective intentions while rendering treatment are irrelevant to the issues placed before

13. The South Dakota Supreme Court did note, however, that an error in judgment instruction may have limited applicability where the underlying medical malpractice case involves a "two schools of thought" situation. *Papke,* 738 N.W.2d at 527 n. 15.

14. The Superior Court also cited to those jurisdictions that it determined continued to allow error in judgment instructions (*Ward v. Glover,* 206 S.W.3d 17, 41 (Tenn.App.2006); *DiFranco v. Klein,* 657 A.2d 145, 148–49 (R.I.1995); *Fraijo v. Hartland Hosp.,* 99 Cal.App.3d 331, 160 Cal.Rptr. 246 (1979)), and those jurisdictions that permit the use of error in judgment instructions only in the limited circumstance where the facts of the case present a "two schools of thought" scenario (*Das v. Thani,* 171 N.J. 518, 795 A.2d 876, 881–82 (2002); *Francoeur v. Piper,* 146 N.H. 525, 776 A.2d 1270, 1275 (2001); *Borja v. Phoenix General Hosp., Inc.,* 151 Ariz. 302, 727 P.2d 355, 357–58 (1986); *Kobos v. Everts,* 768 P.2d 534, 537–38 (Wyo.1989)). *Pringle,* 980 A.2d at 172 n. 6.

a jury in a medical malpractice case. *Pringle, supra* at 173–74.

Appellants offer no compelling argument that a trial court *must* utilize "error in judgment" or similar language in order to convey to the jury principles pertaining to a physician's standard of care. As illustrated, trial courts are capable of clearly articulating such relevant principles without employing phrases such as "error in judgment." Additionally, Appellants have not put forth any persuasive argument that counters the concerns expressed by the Superior Court, the Committee on Proposed Standard Civil Jury Instructions, and many foreign jurisdictions, that phrases such as "error in judgment" have the strong potential to confuse, rather than to clarify for, the jury the appropriate standard of care in medical malpractice cases. At most, Appellants refer to older Superior Court cases that have approved such language or to articulations by this Court regarding the principle that "a physician is not liable for an error of judgment." *See Yohe, supra* at 170.

█ However, the inclusion of a particular phrasing in a court opinion is not the same as concluding that such language ought to be read verbatim to a lay jury. As recognized by several courts, legal decisions are written primarily for those versed in the law, and a passage in an opinion—even though a correct statement of the law—may not be an appropriate way to explain the law to a jury. *See Azzarello v. Black Bros. Co., Inc.*, 480 Pa. 547, 391 A.2d 1020, 1026 (1978) (observing that principles articulated in the Restatement of Torts that have value in providing guidance to the bench and bar are not necessarily appropriate for use in a jury charge: "Thus the mere fact that we have approved Section 402A, and even if we agree that the phrase 'unreasonably dangerous' serves a useful purpose in predicting liability in this area, it does not follow that this language should be used in framing the issues for the jury's consideration."); *see also Rogers*, 772 P.2d at 931 ("An instruction that accurately quotes or faithfully paraphrases an appellate decision is not necessarily beyond reproach. Indeed, 'it is not advisable in charging the jury to use the exact words of an appellate court opinion.'") (quoting

*Ireland v. Mitchell,* 226 Or. 286, 359 P.2d 894 (1961)). Thus, we reject Appellant's contention that our discussion in *Yohe, supra,* or other cases, regarding certain principles relevant to medical malpractice jurisprudence, compels us to uphold the error in judgment instruction in the instant case.

Because Appellants have failed to advance a convincing argument against the weight of opinion that error in judgment instructions pose palpable and substantial risks of confusing juries with respect to the standard of care in medical malpractice cases, and because Appellants have illustrated, rather than refuted, the lack of any necessity to use error in judgment instructions, we see no reason to disturb the well-considered holding of the Superior Court that error in judgment instructions should not be used in jury charges in medical malpractice cases.[15] Accordingly, we find no merit in Appellant's arguments that the Superior Court erred in this case by generally rejecting error in judgment instructions in medical malpractice cases, and we hold that the Superior Court correctly determined that such instructions should not be so utilized.

Similarly, we see no merit in Appellants' arguments that the error in judgment instruction was appropriate in the instant case, even if it may not have been in *Pringle.* Again, Appellants have failed to overcome the well-considered reasons of the Superior Court for rejecting generally error in judgment instructions in medical malpractice cases. Moreover, Appellants' argument that the error in judgment instruction was

15. Because this case is not a "two schools of thought" case, we make no ruling as to whether an error in judgment instruction is appropriate in such a case. *See Jones v. Chidester,* 531 Pa. 31, 610 A.2d 964, 969 (1992) (allowing "two schools of thought" instruction in appropriate cases). However, the reasons set forth herein for our rejection of error in judgment instructions in medical malpractice cases not involving an issue of the "two schools of thought" doctrine may, as illustrated, appear to have applicability in "two schools of thought" cases as well. That is, if a physician, in his or her "judgment," selects from among several possible treatments or diagnoses, all of which are within the standard of care, then the physician has arguably not committed an "error," even if it turns out that the treatment or diagnosis the doctor chose was physiologically incorrect.

appropriate in the instant case is more closely linked to their next contention, which we now address.

E

Appellants next argue (Dr. Grumbine, most particularly) that the Superior Court also erred in this case by ordering a new trial because an erroneous jury instruction does not automatically mean that a new trial is warranted. Rather, Appellants contend, correctly, that the reviewing court must view the charge in its entirety in order to determine whether the erroneous instruction constituted a fundamental error in the context of the whole. *See Quinby,* 907 A.2d at 1069–70. Appellees do not dispute the foundational legal principle involved here; rather, they contend that the Superior Court did view the erroneous instruction within the appropriate context when considering whether a new trial was warranted.

Appellees are correct. Here, the Superior Court's opinion indicates that it devoted considerable attention to the trial court's error in judgment instruction within the context of the entire jury charge and Appellant's related arguments to the jury, which the trial judge actually referenced in his charge. *Passarello,* 29 A.3d at 1167–69. The Superior Court's legal conclusion that Appellees were prejudiced by the error in judgment instruction is unmistakably derived from this comprehensive review. The court reasoned:

Whereas the law allows only consideration of whether the care a physician rendered fell below the standard of care established by expert testimony, the [trial] court's instruction allowed the jury to weigh[ ] the subjective state of mind with which Dr. Grumbine undertook her treatment of baby Anthony Passarello. Dr. Grumbine's counsel, fully aware that the error in judgment instruction would be given, primed the jury to receive it by repeatedly emphasizing the role of judgment in a physician's decision-making process. In addition, and perhaps more consequentially, counsel focused the jury's attention on Dr. Grumbine's subjective state of mind, casting her conduct during the requisite

period as a matter of whether she had behaved conscientiously, *i.e.,* whether she did her best. In so doing, counsel used the error in judgment rule not as a measure of whether Dr. Grumbine deviated from the standard of care in any specific act or omission, but as a measure of Dr. Grumbine's character as a professional. The following excerpt, despite—or perhaps because of—its length, is especially illustrative:

When we talk about the facts, what I want to do is give you some parameters of the choices that you will be asked to make. You're gonna be given a verdict slip and on that slip is a set of three questions that you will be asked to answer. The first question, do you find that the Defendant Rowena Grumbine, M.D. was negligent? Now what does that mean? Well what the judge will tell you when you talk about negligence[,] the issue is was she careless or was she unskilled in the care that she rendered or the decisions that she made? So you must ask yourself does a careless doctor spend 15 to 20 minutes on the phone with concerned parents on a Sunday? Does a careless doctor make special arrangements on a Monday morning before her office is even open, before nurses are even in the office[,] to see a child when a parent has concerns? Does a concerned or careless doctor sit there for an hour and actually watch the child eat? Does a careless doctor then make an unsolicited phone call to the house the next day just to see how he's doing? Does that same careless doctor then spend an hour on Wednesday during a well-baby visit when the child is well? And does a careless doctor spend three—30 to 40 minutes [sic] on the phone with parents the day after immunizations are given and then make another unsolicited phone call on Saturday[,] her day off[,] in the middle of her three day weekend off[,] to see how the child is doing? These facts show she—one thing[,] she's attentive and she was conscientious. She ordered tests when she thought they were indicated. She made referral to the pediatric specialist when it was indicated.

Now every physician must use clinical judgment. You don't practice medicine by textbook. There's no guideline that you can go to. You don't have something on your blackberry well there's this symptom and this symptom so we're gonna do this. They have to make decisions. A physician cannot warrant care and they cannot guarantee outcomes because of the uniqueness of treating human beings. To require otherwise, to require physicians to be perfect[,] is an impossible burden and we—the law recognizes that we will not do that. When you look at Dr. Grumbine's judgments[,] were they careless, were they unskilled? When you come to the key issue, the August 2 phone call[,] she had to use her judgment[,] and if her judgment was reasonable[,] then she was not careless and she was not unskilled.

N.T., Attorney Bell's Closing Argument, 4/27/09, at 2–4.

What counsel's argument skillfully suggests is that regardless of the objective standard of care, Dr. Grumbine, in an exercise of continued self-sacrifice, acted with the best of intentions and made judgments for which she could not be faulted, in part because they were judgments and a physician cannot warrant care. *Id.* Although we might otherwise recognize such commentary as a manifestation of the broad license counsel enjoys to argue the evidence, in this case, where that argument exploits an erroneous instruction, we cannot minimize the underlying error. Although, as we noted, the language the court used here is not as extensive as that employed by the court in *Pringle,* counsel's argument effectively magnified the error, rendering the resulting verdict as likely the result of the incorrect charge as any we can conceive.

Under these circumstances, we cannot deem the court's error harmless. As we have noted, the award of a new trial must be premised on a finding that error in the conduct of the trial prejudiced the defendant by materially affecting the outcome of the case. In this case, we find that benchmark satisfied. Our holding in *Pringle,* which should have been applied in this case, disavowed the very argument that

counsel made. Nevertheless, the trial court's charge effectively insulated that argument, potentially confused the jury, and placed the plaintiffs at a disadvantage unrelated to the quality or quantity of the evidence they adduced. Under these circumstances, we find the prejudice inherent in the court's error to be clear.

*Id.*

Significant to our review is the fact that Appellants make no effort to address the above analysis of the Superior Court. Rather, Dr. Grumbine argues that the error in judgment charge should be viewed only in context with other select portions of the trial judge's jury instruction. *See* Dr. Grumbine's Brief at 20–24.[16] Accordingly, we conclude that Appellants have failed here to assert a meritorious argument.

### IV

Finally, we granted review also to determine whether the Superior Court properly applied its holding in *Pringle* to the case at bar, since *Pringle* was decided while the post-verdict motions were pending in this case.

The general rule in Pennsylvania is that appellate courts apply the law in effect at the time of appellate review. *Commonwealth v. Housman,* 604 Pa. 596, 986 A.2d 822, 840 (2009). "This means that we adhere to the principle that a party whose case is pending on direct appeal is entitled to the benefit of changes in law which occur[ ] before the judgment becomes final." *Blackwell v. State Ethics Comm'n,* 527 Pa. 172, 589 A.2d 1094, 1099 (1991) (citations and internal quotation marks omitted). However, this general rule is not applied rotely. *Id.* Whether a judicial decision should apply retroactively is a matter of judicial discretion to be decided on a case-by-case basis. *Id.; Office of Disciplinary Counsel v. Surrick,* 561 Pa. 167, 749 A.2d 441, 444 (2000). To determine whether a decision should have retroactive effect, a court should first determine whether the decision announced a new rule of law.

**16.** Blair Medical made a more cursory argument on this issue. *See* Blair Medical's Brief at 13–14.

*Surrick, supra* at 444. If the decision announced a new rule, the court should then consider whether: (1) retroactive effect will further or hinder the purpose of the new rule; (2) the parties will be unfairly prejudiced because they relied on the old rule; and (3) giving the new rule retroactive effect will detrimentally affect the administration of justice. *Cleveland v. Johns–Manville Corp.*, 547 Pa. 402, 690 A.2d 1146, 1151 (1997).[17]

Appellants argue that *Pringle* established a new rule of law because it explicitly removed the discretion trial courts previously possessed to give an "error in judgment" charge. They maintain that the "new" rule should not apply in this case because: (1) the rule's purpose—which they assert is to improve clarity in jury instructions—will not be served by applying it here, because as a whole, the jury instructions in this case were clear and correctly stated the law; (2) there has been substantial reliance on the "old" rule because it was longstanding; and (3) retroactive application will require Appellants and the trial court to have a new trial, and treats this case differently from other cases in which the instruction was given and the verdict has not been reversed on appeal.

■■■ Although *Pringle* did announce a new rule of law, the Superior Court properly applied its decision in *Pringle* here. A decision announces a new rule of law if it overrules prior law, expresses a fundamental break from precedent that litigants may have relied on, or decides an issue of first impression not clearly foreshadowed by precedent. *Fiore v. White*, 562 Pa. 634, 757 A.2d 842, 847 (2000). *Pringle* meets that definition because it overruled prior decisions of the Superior Court permitting "error in judgment" jury instructions. *See, e.g., Schaaf v. Kaufman*, 850 A.2d 655, 666 (Pa.Super.2004).

The Superior Court nonetheless properly applied *Pringle* to this case because all three factors weigh in favor of retroactive application. Applying the rule here will serve the purpose of *Pringle:* ensuring that juries in medical malpractice cases

---

**17.** *See also Surrick, supra* at 444; *Blackwell, supra* at 1100 (citing *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971)).

properly apply the objective standard of professional negligence. *See Pringle, supra* at 173–74. That purpose will be furthered here by the award of a new trial at which the court does not give such an instruction. Indeed, justice has been hampered here by the giving of the instruction, which was potentially confusing and misleading, and seemed to contradict other jury instructions that accurately explained the objective standard of care.

The second factor, reliance, also weighs in favor of retroactive application. Appellants, and other defendants in their position, did not rely on the "error in judgment" instruction as a substantive matter of law that alters or modifies the essential standard of care. Rather, they sought to use the terminology "error in judgment" as an illustration of the standard of care. However, even without the instruction, defendants in medical malpractice cases, so long as the evidence permits, will be able to argue to the jury and obtain the appropriate jury instructions regarding any matter that the error in judgment instruction was originally intended to illustrate; they will just no longer be able to request for a point of charge the use of the phrase "error in judgment" or similar language.

Finally, because applying the rule in this case will have no deleterious effect on the administration of justice, the third factor likewise poses no impediment to retroactive application. Appellants' observation that applying the rule here will require the parties and the trial court to undergo a second trial will be true in any case where a court overrules prior precedent. If we were to endorse Appellants' approach, court decisions could not even apply in the case in which they were announced if doing so would require further proceedings, which is clearly not the case. *See, e.g., Christy v. Cranberry Volunteer Ambulance Corps, Inc.*, 579 Pa. 404, 856 A.2d 43 (2004); *Commonwealth v. Ardestani*, 558 Pa. 191, 736 A.2d 552 (1999). Appellants' claim that retroactive application will result in unequal treatment is similarly unsound. The rule will properly be applied to any other case where an objection to the instruction has properly been preserved and in which a final judgment has not been entered.

## V

For the foregoing reasons, the order of the Superior Court is affirmed, and we remand to the trial court for proceedings consistent with this opinion.

Justices BAER, TODD, and STEVENS join the opinion.

Chief Justice CASTILLE files a dissenting opinion.

Justice SAYLOR files a concurring and dissenting opinion.

Justice EAKIN files a dissenting opinion in which Chief Justice CASTILLE joins.

### *DISSENTING OPINION*

Chief Justice CASTILLE.

I respectfully dissent, and I join Mr. Justice Eakin's Dissenting Opinion. The Majority affirms the award of a new trial premised upon an alleged "error" never raised at trial: specifically, appellees did not object to the "error in judgment" charge on the basis that it was substantively misleading, confusing, and prejudicial.[1] Rather, as Justice Eakin details, appellees' objections at trial and in post-trial motions focused on the distinct ground that such a charge was inappropriate under the facts of this case and that the charge was redundant because its essence was adequately covered by the standard jury instructions, which rendered an additional, specific charge unnecessary. Because the substance of the trial and post-trial objections made does not encompass the discussion forming the basis for the Superior Court's decision, which is approved by the Majority's affirmance here, the Court's decision is an exercise is *obiter dictum.*

I write further to address two points: retroactivity and prejudice. Concerning retroactivity, I have difficulty with the Majority's discussion of the Superior Court's decision in *Pringle v. Rapaport,* 980 A.2d 159 (Pa.Super.2009) (*en banc*),

---

1. Only appellant Rowena T. Grumbine raised and argued waiver before this Court.

holding that an error in judgment jury charge is always inappropriate in medical malpractice actions. This Court has noted that a judicial decision that announces a new rule of law or "overrule[s], modif[ies] or limit[s] any previous case **from this Court**" is generally not applied retroactively due to the effect on litigants who relied on the previous decisional rule made by this Court. *Kendrick v. District Attorney of Philadelphia County*, 591 Pa. 157, 916 A.2d 529, 538 (2007) (quoting *Commonwealth v. Eller*, 569 Pa. 622, 807 A.2d 838, 844 (2002) (emphasis in original)). However, "[n]ot every opinion creates a new rule of law. Generally, where we have yet to rule explicitly on an unresolved legal issue, the first decision providing a definitive answer announces a new rule of law. When **this Court** issues a ruling that overrules prior law, expresses a fundamental break from precedent, upon which litigants may have relied, or decides an issue of first impression not clearly foreshadowed by precedent, **this Court** announces a new rule of law." *Fiore v. White*, 562 Pa. 634, 757 A.2d 842, 847 (2000) (emphasis supplied).

The Majority states that "*Pringle* did announce a new rule of law" and approves application of that new rule to retroactively find that the trial here was unfair. Maj. Op. at 602, 87 A.3d at 308. As a threshold matter, the Superior Court's proper institutional role does not encompass formulating or announcing new rules of law. When it comes to these sorts of decisional "rules" involving matters of Pennsylvania law, the formal purpose of the Superior Court is to implement the decisional law of this Court. *See Commonwealth v. Dugger*, 506 Pa. 537, 486 A.2d 382, 386 (1985).[2] As this Court indicated through the emphasis on the "from this Court" language in *Eller*, *Kendrick* and *Fiore*, "new" rules are generally the province of this Court. *See also In re L.J.*, 622 Pa. 126, 79 A.3d 1073 (2013) (emphasis on this Court announcing new

2. I have discussed elsewhere the difficulty in ascertaining whether an intermediate appellate court has overstepped its bounds in crafting a "new rule," noting that the alleged overstepping oftentimes involves the lower court's mere good faith, if ultimately mistaken, effort to implement governing principles from this Court in new scenarios. *See Commonwealth v. Liston*, 602 Pa. 10, 977 A.2d 1089, 1095–1100 (2009) (Castille, C.J., concurring, joined by Saylor and Eakin, JJ.).

rules); *Commonwealth v. Pitts,* 603 Pa. 1, 981 A.2d 875 (2009) (Castille, C.J., concurring) ("putting aside the question of whether the Superior Court should purport to promulgate new 'rules' or refine old ones in procedural matters"). Trial courts and intermediate appellate court panels properly can, and often do, opine regarding what those jurists believe to be the proper decision in a case based upon the application of principles deriving from constitutional provisions, statutes, formal procedural rules, and decisional law. And, of course, the lower courts are frequently faced with novel issues, whether it be a novel issue of law or settled law invoked in a novel scenario, a clash of competing principles, etc.

"New rules" and concomitant questions of retroactivity are not always of one kind. In speaking of such "new rules" and concerns of retroactivity, we can only be talking of procedural rules promulgated by this Court (whether through our Rules Committees process, or in the context of a specific case requiring broader supervisory guidance), *see, e.g., Commonwealth v. Holmes,* 621 Pa. 595, 79 A.3d 562 (2013); or decisional "rules" arising from this Court's controlling interpretations of substantive law, whether the rule ultimately derives from constitutional provisions, *see, e.g., Commonwealth v. Henderson,* 616 Pa. 277, 47 A.3d 797 (2012), statutes, *see, e.g., Commonwealth v. Dickson,* 591 Pa. 364, 918 A.2d 95 (2007), or formal procedural rules. *See, e.g., Commonwealth v. Brock,* 619 Pa. 278, 61 A.3d 1015 (2013).

Strictly speaking, the Superior Court does not establish new rules. To be sure, it may do its best to apply existing law to new scenarios, and those applications create a body of governing law within that court, including law on points this Court has yet to consider. Once we accept a case for review, however, the question is not whether some prior decisional "rule" of the Superior Court should apply retroactively; the question is the retroactive or prospective effect of the rule this Court announces or approves in our decision.

There can be no doubt that the Court today has established a new substantive rule. This Court has never approved (or disapproved) an "error in judgment" jury instruction in a

medical malpractice case before today—much less have we ever remotely held that the issuance of such a charge is reversible error. As Justice Eakin points out, appellees are not entitled to application of this new rule. A litigant can only benefit from changes in the law occurring during the pendency of a case where the litigant properly preserved a challenge bottomed on the same theory leading to the new rule. Dissenting Op. at 612, 87 A.3d at 314 (citing *Blackwell v. Commonwealth State Ethics Commission*, 527 Pa. 172, 589 A.2d 1094, 1099 (1991)). Appellees did not properly preserve, as a basis for their challenge to the error in judgment charge, the basis for the holding in *Pringle*, which the Majority adopts as our new rule.

Even assuming that appellees raised the objection that the Superior Court and the Majority believe they raised, and further assuming that appellees are entitled to the Court's new substantive rule, I fail to see how appellees were prejudiced by the charge at issue here.

Examining the trial court's jury charge in its entirety, rather than focusing on discrete passages, it is clear that the court's charge was not problematic. The charge on negligence principles began with a basic definition of the concept of negligence as the absence of the ordinary care that a reasonably prudent person would exercise in the circumstances presented and that negligence can result from an act or a failure to act. N.T. Jury Charge, 4/27/09 at 12–13. The court then provided a comprehensive description of professional negligence:

> Professional negligence consists of a [ ] negligent, careless or unskilled performance by a physician of the duties imposed upon her by the professional relationship with a patient. It is also negligence when a physician shows a lack of proper care and skill in the performance of a professional act. A physician MUST have the same knowledge and skill and use the same care normally used in the medical profession. A physician who's [sic] conduct falls below the standard of care is negligent. A physician who professes to be a specialist in a particular field of medicine must have the same knowledge and skill and use the same care as others

in that same medical specialty. In this case Dr. Grumbine is a pediatrician. A specialist who's [sic] conduct does not meet this professional standard of care is negligent. Under this standard of care a physician must also keep informed of the contemporary developments in the medical profession or her specialty and must use current skills and knowledge. In other words a physician must have up to the date medical skills and knowledge and if she fails to keep it current or fails to use current knowledge in the medical treatment of the patient the physician is negligent.

*Id.* at 13–14.

Later in the charge, following a discussion of factual cause, burden of proof and damages, the court read selected points for charge submitted by the parties and identified them as such. As to Dr. Grumbine, the court reiterated the standard of care charge:

Judging the care and treatment of Defendant you must not use hindsight but you must judge the Defendant on the conditions and circumstances and facts known to her at the time she was rendering treatment to Anthony—Anthony Passarello. You must judge a physician by the skill and knowledge that she possess [sic] and by the reasonableness of her treatment. In order to recover against the Defendant the Plaintiffs must prove the Defendant did not possess or employ the skill and knowledge required to treat Anthony Passarello, that she did not exercise the care and judgment of a reasonable person under the circumstances and that the conduct caused the harm being claimed. If the Plaintiffs do not meet this burden of proof then your verdict must be in favor of the Defendant and against the Plaintiffs.

\* \* \*

In determining whether a physician was negligent you may not rely on hindsight to find that the doctor's treatment produced a bad outcome since unexpected, [ ] unfortunate or even [ ] disastrous results is [sic] not a proof of negligence. Rather you must determine whether that physician failed to have and exercise ordinary skill, care, and knowledge of a

specialist in this case a pediatrician in the circumstances which were present at the time.

*Id.* at 33, 35.

As to Blair Medical's requested points for charge, the court charged the jury regarding errors in judgment:

In medical negligence cases there is no presumption of or inference of negligence merely because of an unfortunate result which might have occurred despite the exercise of reasonable care. Under the law physicians are permitted a broad range of judgment in their professional duties and physicians are not liable for errors of judgment unless it's proven that an error of judgment was the result of negligence.

*Id.* at 35–36.

There is, in my view, nothing erroneous or confusing in these jury instructions. Physicians, like lawyers and judges, do use judgment. The charge here fairly and accurately described general negligence concepts and then related those concepts to professional negligence. The trial judge repeatedly informed the jury that the guiding principles at issue were the standard of care of a professional in Dr. Grumbine's position and the reasonableness of her conduct as a professional. The court's brief error in judgment charge related back to the negligence charge by directly stating that a physician is liable for an error of judgment resulting from negligence. The twin notions that a physician is liable for negligence and that she does not escape liability for negligence by claiming an error in judgment were made crystal clear in the trial judge's charge to the jury.

The plaintiff in a medical malpractice case, of course, is free to stress that an exercise of professional judgment that represents a deviation from the standard of care should result in liability. But, there is no reason for courts to work backwards and reformulate charges so that they better square with the slanted arguments, and "spin," preferred by one side or the other.

Notably, as Justice Eakin points out, the error in judgment charge disapproved by the Superior Court in *Pringle* went a significant step farther than the charge in this case by stating:

> Folks, if a physician has used his best judgment and he has exercised reasonable care and he has the requisite knowledge or ability, even though complications resulted, then the physician is not responsible, or not negligent. The rule requiring a physician to use his best judgment does not make a physician liable for a mere error in judgment provided he does what he thinks best after careful examination.

*Pringle*, 980 A.2d at 164. This distinct directive potentially confused and misled the jury regarding the concepts of reasonable care and negligence, perhaps leading the *Pringle* jury to believe that an error in judgment relieves a physician of liability in all instances. It may be that the *Pringle* panel correctly decided that case in light of the distinctive charge given. The fact of the distinction, however, should serve as a warning before upsetting jury verdicts following upon very different jury charges, in the rush to establish some preferred prescriptive "rule."

Obviously, there are some instances in which an error in judgment instruction is inappropriate. Specifically, medical malpractice actions involving straight negligence claims that the physician's conduct fell below the standard of care, such as, for example, where a surgeon leaves implements or surgical equipment inside a patient's body, would not be amenable to an error in judgment instruction. It is not difficult to envision, however, a scenario where a physician has two or more different potential paths to follow in treating a patient, including judgment calls such as whether to order certain diagnostic tests or to prescribe certain medications given the potential complications of the tests or drugs, and then used judgment in a manner that arguably comported with the standard of care, but where the ultimate result for the patient was not good. In that instance, it would be appropriate to charge the jury that it can find that a physician whose actions fall within the standard of care is not liable for an error in

judgment. The jury would then determine whether the physician's exercise of judgment was reasonable and within the standard of care. Of course, trial courts should emphasize that a physician's conduct must always meet the applicable standard of care. It is only when a physician acts within the standard of care that a mere error in judgment can excuse liability.

This matter is just such a case, and the trial court's charge in this instance allowed the jury to determine if Dr. Grumbine's exercise of judgment was within the standard of care. It apprised the jurors that Dr. Grumbine's conduct must have been reasonable and within the standard of care applicable to Dr. Grumbine's specialty of pediatrics for her to be found not liable. In its brief error in judgment charge, the court again introduced the concepts of reasonable care and the standard of care. I do not believe that the charge in this case could possibly have prejudiced appellees.

I respectfully dissent.

### CONCURRING AND DISSENTING OPINION

Justice SAYLOR.

I join Part I of the majority opinion, concur in the result as to Part II, generally support the majority's rationale in Parts III(A) through (D), and dissent relative to Parts III(E), IV, and V.

Briefly, I am aligned with the majority's decision to reconsider the appropriateness of distinguishing between an error in judgment and medical negligence, since the relevant concepts can be explained to lay jurors in a more straightforward fashion and the notion of a non-negligent error in judgment has the potential to confuse. On this point, my difference with the majority is centrally one of degree, in terms of the potential impact of injection of a brief reference to errors in judgment into an otherwise appropriate jury charge. Nevertheless, based on the possibility of some uncertainty or confusion, I join the majority in establishing a bright-line rule proscribing the errors-in-judgment instruction in medical mal-

practice cases, albeit I would do so only prospectively, prohibiting the trial courts from using the phraseology in jury instructions in medical malpractice cases.

In terms of the result, I respectfully dissent based on the noted difference in degree and my position that the *per se* rule should be prospective.

## DISSENTING OPINION

Justice EAKIN.

As I would find appellees' argument contending the "error in judgment" instruction is inherently confusing was waived by their failure to object on this ground at trial and further take issue with the majority's adoption of *Pringle v. Rapaport*, 980 A.2d 159 (Pa.Super.2009) (*en banc*), I respectfully dissent. While the majority's recitation of the facts surrounding appellees' "error in judgment" instruction challenge is vague, I find the particulars salient to the waiver analysis. During the charging conference, appellees' counsel noted the following regarding Dr. Grumbine's proposed "error in judgment" instruction:

I have law ... I have law on the judgment at my hotel room.

\* \* \*

I just don't have the law with me that this is ... that this case did not develop and is not appropriate for an error of judgment charge.

\* \* \*

There is specific law in medical malpractice cases dealing [with] when the error of judgment charge needs to be given and when it isn't. It's at my hotel. I just don't have it here.

N.T. Charge Conference, 4/24/09, at 85–86. Disregarding other potential arguments regarding whether these statements amounted to a proper objection and whether such objection preserved appellees' challenge to the "error in judgment" instruction actually given at trial from Blair Medical's

proposed instructions, these comments clearly state a challenge to the applicability of the "error in judgment" instruction to the facts of this case, not an assertion the charge should not be given because it is inherently confusing.[1]

In their motion for post-trial relief, appellees challenged the "error in judgment" instruction on two bases, neither of which even hinted at it being inherently misleading:

11. Plaintiffs[ ] objected to the "Error in Judgment" charge as this case involved a failure to test [or] diagnose.

12. Plaintiffs[ ] also objected to the "Error in Judgment" charge on the basis that this charge was adequately covered by the Pennsylvania Suggested Standard Jury Instructions and that no further charge was necessary.

Plaintiff's Motion for Post–Trial Relief, 5/5/09, at 2–3 (internal citations omitted). In fact, appellees' assertion the "error in judgment" instruction is inherently misleading does not appear until their brief in support of their post-trial motion, wherein appellees completely abandon their initial challenges and rely solely on *Pringle*.[2]

While the majority correctly notes litigants are entitled to the benefit of changes in the law that occur during the pendency of their case, such is true only where they have properly preserved a challenge concerning the basis on which the law has been altered. *See, e.g., Blackwell v. Commonwealth State Ethics Commission,* 527 Pa. 172, 589 A.2d 1094, 1099 (1991) (holding our prior decision declaring statute unconstitutional was to be applied retroactively "to all cases pending at the time of that decision in which the issue of the constitutionality of [the statute] was timely raised and preserved"). Where, as here, the objection was on a wholly

1. While it appears further discussion regarding the "error in judgment" instruction took place when the charge conference was reconvened, there is no transcription of the same and nothing in the record suggests, and appellees have not argued, they asserted any further basis for their objection at that time. When called to side-bar following the jury charge, appellees' counsel simply renewed his objections from the charging conference. N.T. Jury Charge, 4/27/09, at 37.

2. Appellees' abandonment of their prior bases further supports that such were inapplicable to their argument under *Pringle*.

different basis, appellees should not be permitted to challenge pursuant to *Pringle* under the guise that a challenge to the "error in judgment" charge on any basis gives them the blanket benefit of any new law regarding any facet of that instruction.

I also find the majority's adoption of *Pringle's* wholesale ban on the "error in judgment" instruction in medical malpractice cases troubling, particularly given the majority's failure to quote, in full, the "error in judgment" instruction from that case, and its attendant failure to analyze the additional language contained therein. Further, the majority's characterization of the "error in judgment" instruction in this case as "very similar" to that given in *Pringle* is misleading, especially in light of the majority quoting only a portion of the *Pringle* instruction in support of this determination. *See* Majority Op., at 572, 87 A.3d at 290. The omitted portion of the instruction reads as follows:

> Folks, if a physician has used *his best judgment* and he has exercised reasonable care and he has the requisite knowledge or ability, even though complications resulted, then the physician is not responsible, or not negligent. The rule requiring a physician to use *his best judgment* does not make a physician liable for a mere error in judgment provided he does what *he thinks* best after careful examination.

*Pringle,* at 164 (citation and additional emphasis omitted). As the majority notes, in determining the "error in judgment" charge "has no place in medical malpractice cases[,]" the Superior Court reasoned:

> [T]he "error [in] judgment" charge wrongly suggests to the jury that a physician is not culpable for one type of negligence, namely the negligent exercise of his or her judgment[, and] ... wrongly injects a subjective element into the jury's deliberations [by] ... improperly refocus[ing] the jury's attention on the physician's state of mind at the time of treatment, even though the physician's mental state is irrelevant in determining whether he or she deviated from the standard of care. Furthermore, by directing the jury's

attention to what the physician may have been thinking while treating the patient, the jury may also be led to conclude that only judgments made in bad faith are culpable—even though a doctor's subjective intentions while rendering treatment are likewise irrelevant to the issues placed before a jury in a medical malpractice case.

*Id.*, at 173–74. Where, as in this case, the jury is properly instructed on the standard of care and the additional language concerning the physician's state of mind is omitted, the *Pringle* court's concerns—and with them the basis for its "error in judgment" charge ban—are, in my opinion, obviated. To the extent a reasoned analysis could come to an alternative conclusion, the majority fails to engage in the same; instead, it focuses its analysis on the terms "error" and "judgment," to the exclusion of the remainder of the jury charge given, and on its determination "that the essential principles that underlie error in judgment instructions are capable of being stated in a straightforward manner without incorporating phrases such as 'error in judgment.' " [3] Majority Op., at 591, 87 A.3d at 301.

For these reasons, I respectfully dissent.

Chief Justice CASTILLE joins this dissenting opinion.

---

[3] Importantly, such analysis appears at odds with our applicable standard of review:

In examining jury instructions, our scope of review is limited to determining whether the trial court committed a clear abuse of discretion or error of law controlling the outcome of the case. Error in a charge is sufficient ground for a new trial if the charge as a whole is inadequate or not clear or has a tendency to mislead or confuse rather than clarify a material issue. . . . In reviewing a trial court's charge to the jury[,] we must look to the charge in its entirety. *Quinby v. Plumsteadville Family Practice, Inc.*, 589 Pa. 183, 907 A.2d 1061, 1069–70 (2006) (internal citations omitted).