J. S04031/18

2018 PA Super 262

COMMONWEALTH OF PENNSYLVANIA      :      IN THE SUPERIOR COURT OF
                                  :              PENNSYLVANIA
              v.                  :
                                  :
EDWARD CHESNEY,                   :          No. 315 MDA 2017
                                  :
           Appellant              :


Appeal from the Judgment of Sentence, January 25, 2017,
in the Court of Common Pleas of Berks County
Criminal Division at No. CP-06-CR-0004784-2015


BEFORE:  SHOGAN, J., DUBOW, J., AND FORD ELLIOTT, P.J.E.


OPINION BY FORD ELLIOTT, P.J.E.:          **FILED SEPTEMBER 20, 2018**

Appellant, Edward Chesney, appeals from the January 25, 2017 judgment of sentence entered by the Court of Common Pleas of Berks County.  After careful review, we vacate appellant's judgment of sentence and reverse the trial court's order denying suppression.

The trial court provided the following relevant factual and procedural history:

> [L]aw enforcement, pursuant to a warrant, searched a house where [a]ppellant used to live.  Arriving at this house, Detective [James] Gresh [("Detective Gresh")] observed a Buick parked in the driveway.  Trooper Higdon informed Detective Gresh that he could see a small glass vial with a black plastic cap in the vehicle.  After seeing the vial, Detective Gresh opened the vehicle to search, as he was aware that such vials are commonly used to transport PCP.  In the vehicle, the following evidence was discovered: jars, which are commonly used to

store PCP; large vials, which are commonly used to transport PCP; 92.31 grams of PCP, which was contained within these jars and vials, though some of the jars and vials were empty; a very large pair of sweatpants; a digital scale; three handguns and ammunition; seven cell phones, including a Maxwest Cellphone, which contained text messages. Additionally, discovered in the vehicle, was a bank statement, prescription bottle, and insurance documents bearing [a]ppellant's name.

Tying all this evidence together, Detective [George] Taveras [("Detective Taveras")] testified as to the relevance of the most important pieces of evidence. First, the detective explained the relevance of the cell phones and the messages contained within. Specifically, he discussed the messages extracted from the Maxwest Phone. One message, known to have been sent from a phone belonging to [Ivan] Meletiche, corroborated that [a]ppellant and Big Homie were the same person. Though, most important instantly, is a string of messages that stated the following:

> Will you please answer your phone[?]
>
> Chris said if I don't come home with a jar for him he's gonna put his hands on me[.]
>
> [W]ill you please answer your phone [E]d?

Detective Taveras also testified that the quantity of cell phones indicated that [a]ppellant was a drug dealer, since keeping such a large quantity of phones is a common practice in the drug trade. Second, the detective related that the vials, jars, and a scale, were all an integral part of the repackaging and distribution operation needed to sell the PCP found within the vehicle. Third, the detective testified that the only purpose of having empty jars was for the intent of distributing the PCP in sellable quantities. Fourth, the detective testified that presence of

firearms clearly indicated that [a]ppellant desired to protect what was approximately $7,000 worth of PCP found in the vehicle. From all this evidence, Detective Taveras was able to come to the expert opinion that [appellant] intended to distribute the PCP.

Trial court opinion, 5/23/17 at 4-5 (footnotes omitted).

Appellant filed an amended omnibus pretrial motion in which he, *inter alia*, sought to have evidence obtained during a search of his residence and his 2002 Buick LeSabre suppressed. On October 13, 2016, the trial court granted appellant's motion in part, suppressing evidence obtained during a search of his residence, and denied appellant's motion in part with respect to the evidence seized from the 2002 Buick LeSabre.

On January 25, 2017, a jury convicted [a]ppellant[] of the following offenses: five counts of Criminal Use of Communication Facility, five counts of Possession with Intent to Deliver a Controlled Substance – PCP ("PWID"); and five counts of Possession of a Controlled Substance.

After being convicted, [a]ppellant was sentenced to several consecutive sentences. The first period of incarceration, lasting from 6 to 20 years, was received for PWID – Count 14. The second period of incarceration, lasting 2 to 5 years, was received for PWID – Count 10. The third period of incarceration, lasting 2 to 5 years, was received for PWID – Count 11. The fourth period of incarceration, lasting 2 to 5 years, was received for PWID – Count 12. The fifth period of incarceration, lasting 2 to 5 years, was received for PWID – Count 13. Additionally, [a]ppellant was sentenced to 5 years' probation on each charge of Criminal Use of Communication Facility. All probationary sentences are to run concurrently.

Following sentencing, by and through counsel, [a]ppellant filed a post-sentence motion for a new trial and for the modification of sentence. [The trial court] denied this motion on February 8, 2017. On February 21, 2017, [a]ppellant filed a notice of appeal. Subsequently, [a]ppellant petitioned the [trial court] for an extension to file a Concise Statement, which [was] granted. A Concise Statement was then filed on March 20, 2017.

*Id.* at 1. The trial court filed an opinion pursuant to Pa.R.A.P. 1925(a).

Appellant raises the following issues for our review:

I.     Did the trial court err in denying [a]ppellant's pretrial motion to suppress the PCP, firearms, ammunition, and cellphones found in the 2002 Buick LeSabre as the search warrant was invalid and the law enforcement officers had no authority and no good faith reason to enter onto the property of 133 Pieller Road, Berks County, Pennsylvania where the 2002 Buick LeSabre was parked?

II.    Did the trial court err by admitting evidence, to wit, the extracted information from the Maxwest cell phone found in the 2002 Buick LeSabre, pursuant to Pennsylvania Rule of Evidence 404(b)(2) as the probative value of the text messages extracted and shown to the jury did not outweigh the potential for unfair prejudice and should not have been admitted?

III.   Did the trial court err in admitting evidence, to wit, the extracted information from the Maxwest cellphone found in the 2002 Buick LeSabre, based upon an ostensible discovery violation when the appropriate remedy under the Pennsylvania Rule of Criminal Procedure 573 for this type of late discovery which resulted from the Commonwealth's decision to delay the forensic analysis of the cellphone contents until the week prior to the trial, and telling defense counsel of the contents three

business days prior to the start of trial, was exclusion of evidence?

IV. Did the [trial court] err in denying a defense objection to the improper rebuttal testimony of Detective Haser (who testified that he witnessed [a]ppellant leave from and return to 133 Pieller Road on April 20, 2015 between 1:11 a.m. and 1:18 a.m.) offered to rebut testimony of [a]ppellant where [a]ppellant stated clearly that he did not recall being at 133 Pieller Road on April 20, 2015 around 1:00 a.m. and admitted to being present at that location occasionally late at night?

V. Was the evidence presented by the Commonwealth insufficient to prove beyond a reasonable doubt that a Delivery of PCP occurred on April 10, 2015 through the use of cell phone communications (i.e. Counts 5, 6, 10 and 15)[?]

VI. Was the evidence presented by the Commonwealth insufficient to prove beyond a reasonable doubt that the two Deliveries of PCP occurred on April 21 and 22, 2015 through the use of cell phone communications (i.e. Counts 7, 11, 16, 8, 12 and 17)[?]

VII. Was the evidence presented by the Commonwealth insufficient to prove beyond a reasonable doubt that the Delivery of PCP occurred on May 3, 2015 through the use of cell phone communications (i.e. Counts 9, 13 and 18)[?]

Appellant's brief at 11-14.

Appellant's first three issues on appeal pertain to evidence that was seized from the 2002 Buick LeSabre ("LeSabre") parked in the driveway at 133 Pieller Road, North Heidelberg Township, in Berks County, Pennsylvania.

On October 13, 2016, the trial court determined that the search warrant used to search the house did not establish probable cause, and the items seized from the house were suppressed. (**See** trial court opinion, 10/13/16 at 3-4.) Appellant also moved to suppress evidence seized from the LeSabre, which the trial court denied.

On appeal, appellant argues that he had an expectation of privacy in the LeSabre. (Appellant's brief at 37-38.) Specifically, he notes that the LeSabre was parked in a private driveway and that there was no evidence of record that the LeSabre was visible from the street. (**Id.** at 38.) Moreover, appellant contends that the police would not have seen the LeSabre but for their unlawful presence on the property at the time the vehicle was searched. (**Id.**)

The Commonwealth avers that the evidence seized from the LeSabre was in plain view, and thus not subject to a warrant requirement. (Commonwealth's brief at 11-12.) Based upon the observation of a glass vial lying on the floor of the LeSabre, the police searched both the passenger compartment and trunk of the LeSabre. (**Id.** at 12.) Despite the search warrant for the house having been determined to be invalid, the Commonwealth contends that the police were nonetheless able to observe the glass vial inside the LeSabre from a lawful vantage point, as the driveway was a generally accessible area and the police needed "no greater authority to be present in the driveway than delivery persons, visitors, or

those engaged in door-to-door solicitation." (***Id.*** at 13.) To justify its search of the LeSabre, the Commonwealth relies on our supreme court's decision in ***Commonwealth v. Gary***, 91 A.3d 102, 138 (Pa. 2014), in which our supreme court adopted the federal automobile exception, holding that only probable cause must be established in order to search an automobile without a warrant, as the inherent mobility of the automobile provides sufficient exigent circumstances.

The trial court notes that appellant's sole argument in favor of suppression of the evidence found in the LeSabre was based in the plain view doctrine. (Trial court opinion, 10/13/16 at 5.) Specifically, the court states that appellant's claim is that "because of the hour of the day and the nature of the windows in the vehicle, [the police] could not have actually seen the vial lying on the floor without entering the vehicle first." (***Id.***) The trial court upheld the subsequent warrantless search of the LeSabre in reliance on ***Gary***. (***See id.*** at 7.)

When reviewing the denial of a defendant's motion to suppress evidence, we are held to the following standard:

> [An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the

> context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where . . . the appeal of the determination of the suppression court turns on allegation of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to [] plenary review.

*Commonwealth v. Jones*, 121 A.3d 524, 526-527 (Pa.Super. 2015), *appeal denied*, 135 A.3d 584 (Pa. 2016), quoting *Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010), *cert. denied*, 562 U.S. 832 (2010) (internal citations and quotation marks omitted). Pennsylvania appellate courts apply the law in effect at the time of the appellate decision. *Commonwealth v. Tizer*, 684 A.2d 597, 601 (Pa.Super. 1996), citing *Commonwealth v. Metts*, 669 A.2d 346, 353 (Pa.Super. 1995), order reversed on other grounds, *Commonwealth v. Ardestani*, 736 A.2d 552 (Pa. 1999). "This means that we adhere to the principle that, 'a party whose case is pending on direct appeal is entitled to the benefit of changes in law which occur[] before the judgment becomes final.'" *Blackwell v. State Ethics Commission*, 589 A.2d at 1094, 1099 (Pa. 1999), overruled on other grounds, *Bugosh v. I.U. North America, Inc.*, 971 A.2d 1228 (Pa.

2009), quoting ***Commonwealth v. Brown***, 431 A.2d 905, 906-907 (Pa. 1981).[1]

Both the United States Constitution and the Pennsylvania Constitution guarantee that individuals shall not be subject to unreasonable searches or seizures.

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

> The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

Pa. Const., Art. I, § 8.

Evidence obtained as a result of an unlawful search is subject to the fruit of the poisonous tree doctrine. The United States Supreme Court has stated that any material, tangible, or verbal evidence "obtained either during or as a direct result of an unlawful invasion" is inadmissible at trial. ***Wong Sun v. United States***, 371 U.S. 471, 485 (1963).

---

[1] At the suppression hearing, appellant apparently conceded that the driveway was not curtilage; however, based on recent decisional law and the reasoning of the trial court, we do not find waiver.

Our supreme court further stated:

> We need not hold that all evidence is "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable or to be purged of the primary taint."

*Commonwealth v. Cunningham*, 370 A.2d 1172, 1176-1177 (Pa. 1977), quoting *Wong Sun*, 371 U.S. at 487-488.

Pennsylvania courts have recognized that the protections afforded to individuals under both the Fourth Amendment and Article I, Section 8 are applicable to the curtilage of a person's home. *Commonwealth v. Bowmaster*, 101 A.3d 789, 792 (Pa.Super. 2014) (citations omitted). This court defined the curtilage of the home as places "where the occupants have a reasonable expectation of privacy that society is prepared to accept." *Id.* citing *Commonwealth v. Johnson*, 68 A.3d 930, 935 n.3 (Pa.Super. 2013) (citations omitted).

Subsequent to the trial court's filing of its Rule 1925(a) opinion, our supreme court announced its decision in *Commonwealth v. Loughnane*, 173 A.3d 733 (Pa. 2017). In *Loughnane*, the court held that the automobile exception to the warrant requirement recognized by *Gary* does not apply to vehicles parked in private driveways. *Loughnane*, 173 A.3d at 745. The investigative intentions of the police in *Loughnane* were not

addressed as a reason to access the property in the first instance; rather, the case centered on the seizure of the defendant's vehicle in connection with a hit and run investigation.

Consistent with **Loughnane**, in **Collins v. Virginia**, 138 S.Ct. 1663, 1672 (2018), the Supreme Court of the United States held that the federal automobile exception "does not afford the necessary lawful right of access to search a vehicle parked within a home or its curtilage because it does not justify an intrusion on a person's separate and substantial Fourth Amendment interest in his home or curtilage." The Court went on to warn that permitting the police to conduct a warrantless search of a vehicle parked on private property would be tantamount to the automobile exception swallowing the rule established by Fourth Amendment jurisprudence.

> To allow an officer to rely on the automobile exception to gain entry into a house or its curtilage for the purpose of conducting a vehicle search would unmoor the exception from its justifications, render hollow the core Fourth Amendment protection the Constitution extends to the house and its curtilage, and transform what was meant to be an exception into a tool with far broader application.

**Id.** at 1673.

Similar to **Loughnane**, the **Collins** Court did not provide any discussion addressing whether the investigation permitted the police to have access to the driveway. Those circumstances were addressed in detail by **Commonwealth v. Simmen**, 58 A.3d 811 (Pa.Super. 2012), and

*Commonwealth v. Eichler*, 133 A.3d 775 (Pa.Super. 2016), both of which were relied upon by the trial court in the instant appeal.

In *Simmen*, the police were investigating a hit-and-run resulting in property damage. *Simmen*, 58 A.3d at 813. The police followed a trail of fluid from the scene of the accident to the defendant's driveway, where the defendant's vehicle was parked. *Id.* As the officer approached the defendant's house in an effort to speak to the owner of the vehicle parked in the driveway, the officer noticed that the car was leaking fluid from its front end. *Id.* The officer proceeded to knock on the door of the defendant's house and was admitted into the house by the defendant's wife. *Id.* at 814. This court found that the police were permitted to enter the defendant's driveway as they were in the course of an investigation. *Id.* at 816.

Similarly, in *Eichler*, the police, while in the course of investigating a hit-and-run, received information about a possible location of the vehicle involved in the accident. *Eichler*, 133 A.3d at 781. Upon his arrival at the defendant's house, the police officer noted that the truck parked in the defendant's driveway matched the description of the vehicle involved in the accident and the officer observed front-end damage consistent with the accident. *Id.* at 782.

This court noted that "when the police come on to private property to conduct an investigation . . . and restrict their movements to places visitors could be expected to go (e.g., walkways, driveways, porches), observations

made from such vantage points are not covered by the Fourth Amendment."

*Id.*, quoting LaFave, ***Search And Seizure: A Treatise On The Fourth Amendment***, § 2.3(f) (5th ed.) (database updated October 2015). The ***Eichler*** court further noted that,

> Professor LaFave gathers 49 cases in support of this precept, including ***Trimble v. State***, 842 N.E.2d 798, 802 (Ind. 2006) (police entry onto private property and their observations do not violate Fourth Amendment **when police have legitimate investigatory purpose** for being on property and limit their entry to places visitors would be expected to go; the route which any visitor to residence would use is not private in Fourth Amendment sense, so if police take that route **for purpose of making general inquiry or for some other legitimate reason**, they are free to keep their eyes open), and ***State v. Lodermeier***, 481 N.W.2d 614, 624 (S.D. 1992) (approving officer's examination of exterior of garden tractor parked in driveway, because "even though it is part of the curtilage, an officer with legitimate business may enter a driveway and, while there, may inspect objects in open view"). ***See*** LaFave, § 2.3(f) at n. 225 and 229.

*Id.* at 784 n.7 (emphasis added)

Both ***Simmen*** and ***Eichler*** are distinguishable from the instant appeal. In both of those cases, the police entered the curtilage for the purpose of conducting an investigation and they restricted their movements to areas where visitors could be expected to go. In the instant appeal, the police were at appellant's residence executing a search warrant that the trial court subsequently found to be lacking in probable cause. Put another way, the police were not in the course of conducting an investigation when the vial

was observed lying inside the LeSabre. Moreover, there is no evidence of record that would indicate that the police had any reason to be at appellant's residence, but for the defective search warrant. Accordingly, the police were in violation of appellant's Fourth Amendment rights when the vial was observed in the LeSabre. Because the police did not observe the vial in plain view from a lawful vantage point, we, therefore, find that the Commonwealth failed to establish that probable cause existed to search the LeSabre without a warrant, and that the evidence seized from the LeSabre should be suppressed.[2]

We need not address appellant's remaining six issues, as the issues are now moot.

---

[2] Even if the search warrant to search appellant's residence had been valid, the warrantless search of the LeSabre would have nonetheless been improper. As the trial court noted, the search of the LeSabre was "in no way directly tied to the search of the residence." (Trial court opinion, 5/23/17 at 7.) Accordingly, in light of the Supreme Court of Pennsylvania's holding in **Loughnane** and the Supreme Court of the United States' holding in **Collins**, the warrantless search of the LeSabre was unreasonable.

Order denying suppression reversed.   Judgment of sentence vacated. Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/20/2018