J-A07038-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JAMIL BOYD | : | |
| | : | |
| Appellant | : | No. 557 EDA 2021 |

Appeal from the Judgment of Sentence Entered February 9, 2021
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0007878-2018

BEFORE:  DUBOW, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY KING, J.:                    **FILED AUGUST 5, 2022**

Appellant, Jamil Boyd, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his convictions for persons not to possess firearms and carrying firearms without a license.[1] For the following reasons, we vacate the judgment of sentence and remand for further proceedings.

In its opinion, the trial court set forth the relevant facts of this case as follows:

> On the evening of August 17, 2018, [Appellant] was driving a vehicle on or about Germantown Avenue in the city and county of Philadelphia, Pennsylvania.  Philadelphia Police Officers Thomas Lacorte and David Dohan stopped the vehicle for a traffic violation after witnessing [Appellant] proceed through a steady red light at the intersection of Germantown Avenue and Chelten Avenue.  Officer Lacorte

---

[1] 18 Pa.C.S.A. §§ 6105 and 6106, respectively.

approached the driver's side door of the vehicle and asked for [Appellant's] license, insurance, and vehicle registration. [Appellant] stated he did not have any identification upon his person, nor did he have paperwork for the vehicle. When Officer Lacorte asked [Appellant] his name, he stated that his name was Saleem Boyd and gave an incorrect birthdate. Officers Lacorte and Dohan stepped back from the vehicle to the patrol vehicle and ran the name "Saleem Boyd" through both the Philadelphia Crime Information Center (PCIC) and the National Crime Information Center (NCIC) systems. Saleem Boyd was listed as an alias of Jamil Boyd. Upon running the name Jamil Boyd through both PCIC and NCIC, two warrants appeared: one from Delaware County and one from Montgomery County. Officers Dohan and Lacorte then returned to the driver side of the vehicle to inform [Appellant] he had two warrants and that he was under arrest.

[Appellant] stepped out of the vehicle and Officer Lacorte started to place [Appellant's] left hand in handcuffs. Officer Dohan grabbed [Appellant's] right hand. [Appellant] then pushed off the vehicle and started running southbound on Germantown Avenue. Officer Dohan held [Appellant's] shirt tail as he ran. [Appellant] fell over the high curb as Officer Dohan pushed him from behind and [Appellant] hit the ground. Four of [Appellant's] teeth were shattered as a result of the fall. Officer Dohan then jumped on top of [Appellant], followed by Officer Lacorte. [Appellant] struggled, reached back, and grabbed Officer Lacorte's weapon, which was holstered on Officer Lacorte's left hip. [Appellant] started to remove the weapon from the holster while shouting "I'm not going back to jail, I'm not going back to jail. You're gonna have to kill me. Just fuckin' shoot me. Shoot me. Kill me." Officer Lacorte shouted, "Dave, he has my gun, he has my gun." The struggle lasted about two minutes, until Officer Dohan tased [Appellant] two times. The officers were then able to place [Appellant] in handcuffs while he was still yelling and screaming. Philadelphia Police Sergeant Ryan shackled [Appellant's] legs. [Appellant] was then placed in a patrol wagon and transported.

Officers Lacorte and Dohan then went back to [Appellant's] vehicle. Upon opening the door, the officers smelled a strong odor of marijuana. On the passenger side of the

vehicle was a black briefcase. Underneath the briefcase, the officers found a silver and black Ruger 9-millimeter, semiautomatic handgun loaded with one live round in the chamber and thirteen live rounds in the magazine. The firearm was placed on a Philadelphia Police Department property receipt.

Underneath the firearm, the officers found a clear Ziploc bag containing numerous alleged illegal narcotics, including pills, a green weed substance, and a white powder substance. The substances were field tested. Also, inside the Ziploc bag were numerous unused clear jars. Also, in the vehicle was a dog, which was transported to the Philadelphia Animal Care and Control Association.

*    *    *

[Appellant] was arrested and charged with [various offenses related to his possession of contraband]. On November 22, 2019, the motions court denied [Appellant's] motion to suppress evidence. On December 2, 2019, [Appellant] filed a motion to reconsider the motion to suppress. On December 5, 2019, the motions court denied [Appellant's] motion to reconsider.

On September 21, 2020, [Appellant's] jury trial began.

*    *    *

On September 24, 2020, the jury returned a verdict of guilty on the charge of [carrying a firearm without a license] and a not guilty verdict on the charge of disarming law enforcement officer. The jury was deadlocked on the charges resist arrest and manufacture, delivery, or possession with intent to manufacturer or deliver. The trial court declared a mistrial on these two charges and the Commonwealth later withdrew prosecution of these charges. The Commonwealth also withdrew prosecution of the carry firearms in public in Philadelphia charge. During a stipulated waiver trial for the [persons not to possess a firearm] charge, the trial court found [Appellant] guilty. A pre-sentence investigation report was ordered, and a sentencing hearing was scheduled….

* * *

> On February 9, 2021, [Appellant] was sentenced to eleven and a half (11½) to twenty-three (23) months' county confinement followed by four (4) years' reporting probation.
>
> On March 10, 2021, [Appellant] filed a notice of appeal to the Superior Court. On March 11,2021, the trial court filed the [Pa.R.A.P.] 1925(b) order directing [Appellant] to file a statement of errors complained of on appeal. On March 23, 2021, [Appellant] filed a request for extension of time to file a statement of errors upon receipt of all notes of testimony. On March 29, 2021, the trial court denied [Appellant's] request for extension of time as all notes of testimony were available as of March 19, 2021. On April 1, 2021, [Appellant] filed a statement of errors complained of on appeal.

(Trial Court Opinion, filed May 25, 2021, at 2-4) (internal footnotes and some capitalization omitted).

Appellant now raises two issues for this Court's review:

> Was the search of the automobile after [Appellant] was arrested and in police custody illegal, as there was neither probable cause to search nor a search warrant, as well as no valid exigency, and both Federal and Pennsylvania law do not permit a search of an arrestee's car as an incident of that arrest?
>
> Did the trial court err when, in answering a question from the jury, the court refused to instruct the jury that [Appellant] had to be aware of the existence of the firearm in order to be found guilty of possessing it, leaving the jury with an incorrect understanding of the law?

(Appellant's Brief at 5).

In his first issue, Appellant argues that police officers do not have free rein to search an arrestee's vehicle absent a warrant. Appellant asserts that our Supreme Court's recent decision in **Commonwealth v. Alexander**, ____

- 4 -

Pa. ___, 243 A.3d 177 (2020), held that the Pennsylvania Constitution mandates a showing of both probable cause and exigent circumstances to justify a warrantless search of an automobile. Applying *Alexander* to the facts of the instant case, Appellant contends that "there was no probable cause to search the car, and there was neither a warrant nor exigent circumstances justifying the absence of a warrant." (Appellant's Brief at 17). Under these circumstances, Appellant concludes that police conducted an illegal search of the vehicle, and the court should have granted his suppression motion. We agree that some relief is required in light of the suppression court's failure to recognize the applicability of *Alexander*.

The following principles govern our review of an order denying a motion to suppress:

> An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

*Commonwealth v. Ford*, 175 A.3d 985 (Pa.Super. 2017), *appeal denied*, 647 Pa. 522, 190 A.3d 580 (2018) (quoting *Commonwealth v. Jones*, 121 A.3d 524, 526-27 (Pa.Super. 2015)).

"At a suppression hearing, 'the Commonwealth has the burden of establishing by a preponderance of the evidence that the evidence was properly obtained.'" *Commonwealth v. Heidelberg*, 267 A.3d 492, 499 (Pa.Super. 2021) (*en banc*) (quoting *Commonwealth v. Galendez*, 27 A.3d 1042, 1046 (Pa. Super 2011) (*en banc*)). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given to their testimony. The suppression court is free to believe all, some or none of the evidence presented at the suppression hearing." *Commonwealth v. Elmobdy*, 823 A.2d 180, 183 (Pa.Super. 2003), *appeal denied*, 577 Pa. 701, 847 A.2d 58 (2004) (internal citations omitted).

"Both the Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution guarantee individuals freedom from unreasonable searches and seizures." *Heidelberg*, *supra* at 502 (quoting *Commonwealth v. Newsome*, 170 A.3d 1151, 1154 (Pa.Super. 2017)). "As a general rule, 'a warrant stating probable cause is required before a police officer may search for or seize evidence.'" *Id.* (quoting *Commonwealth v. Anderson*, 40 A.3d 1245, 1248 (Pa.Super. 2012)). Regarding automobiles, "Article I, Section 8 affords greater protection to our citizens than the Fourth Amendment, and … the Pennsylvania

Constitution requires both a showing of probable cause and exigent circumstances to justify a warrantless search of an automobile." ***Alexander***, ***supra*** at ___, 243 A.3d at 181.

Additionally, we emphasize: "The general rule in Pennsylvania is that appellate courts apply the law in effect at the time of appellate review." ***Passarello v. Grumbine***, 624 Pa. 564, 601, 87 A.3d 285, 307 (2014). "This means that we adhere to the principle that, a party whose case is pending on direct appeal is entitled to the benefit of changes in law which occur before the judgment becomes final." ***Commonwealth v. Chesney***, 196 A.3d 253, 257 (Pa.Super. 2018) (quoting ***Blackwell v. Com., State Ethics Com'n***, 527 Pa. 172, 182, 589 A.2d 1094, 1099 (1991)).

Instantly, the court provided reasons in support of its decision to deny Appellant's suppression motion. In its opinion, the suppression court reasoned that "[w]hile the Pennsylvania Supreme Court overruled its decision in ***Commonwealth v. Gary***, [625 Pa. 183, 91 A.3d 102 (2014)] in its decision in [***Alexander***, ***supra***], this incident occurred in 2018. Thus, the applicable standard under ***Gary*** was that an automobile search did not require any exigency beyond the inherent mobility of the motor vehicle." (Suppression Court Opinion, filed July 16, 2021, at 6) (internal footnote omitted). The court concluded that "probable cause to search the vehicle arose prior to the officer's returning to the vehicle," and police conducted a proper warrantless search. (***Id.*** at 7).

Although the court recognized the existence of our Supreme Court's decision in *Alexander*, *supra*, it failed to apply the holding from that case to the underlying facts. Because Appellant was entitled to the benefit of this change in the law, which occurred before his judgment of sentence became final, the court committed legal error by basing its decision on the pre-*Alexander* standard. *See Chesney, supra*; *Ford, supra*. Complicating matters further, the court's decision to ignore the mandates of *Alexander* resulted in a record that does not include findings of fact and conclusions of law regarding the potential applicability of an exception to the warrant requirement.

Accordingly, we vacate Appellant's judgment of sentence and remand for a new suppression hearing. At that time, the court can receive evidence to determine whether any exceptions to the warrant requirement were present. If the court decides to deny Appellant's suppression motion, no new trial will be necessary, and the court may reimpose Appellant's judgment of sentence. If the court decides to grant Appellant's suppression motion, it shall also grant him a new trial.[2]

Judgment of sentence vacated. Case remanded for further proceedings. Jurisdiction relinquished.

---

[2] Due to our resolution of Appellant's first issue, we need not address the second issue raised on appeal. Nevertheless, Appellant may re-raise this issue in a subsequent appeal in the event that the court reinstates the judgment of sentence.

Judge McLaughlin joins.

Judge Dubow did not participate in the consideration or decision of this case.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/5/2022