J-S07011-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NUNZIO MATTERA | : | |
| | : | |
| Appellant | : | No. 550 EDA 2022 |

Appeal from the Judgment of Sentence Entered January 24, 2022
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0000642-2021

BEFORE: DUBOW, J., KUNSELMAN, J., and KING, J.

MEMORANDUM BY DUBOW, J.: **FILED MAY 18, 2023**

Appellant, Nunzio Mattera, appeals from the judgment of sentence entered by the Delaware County Court of Common Pleas on January 24, 2022, following his conviction for Firearms Not to be Carried Without a License.[1] Appellant challenges the trial court's denial of his motion to suppress physical evidence. After careful review, we affirm the judgment of sentence.

On December 4, 2020, at approximately 8:30 AM, several police officers arrived at Appellant's home in response to an anonymous call claiming that a male and female were arguing and that the male had a gun. Officers later determined that the anonymous caller was Appellant's adult son.

As the officers approached, Appellant exited the house. The officers patted Appellant down and did not find any weapons on his person.

---

[1] 18 Pa.C.S. § 6106(a)(2).

Subsequently, officers walked Appellant down the driveway to where Appellant's wife stood. The trial court found that the body camera footage revealed that Appellant admitted, during his interaction with his wife, that he knew a firearm was inside his vehicle.

During this timeframe, officers conducted a protective sweep inside and outside the house to determine if anyone else was at the residence. As part of the sweep, and important to our analysis, Officer Matthew McCusker used his flashlight to look inside the window of a Chevrolet Tahoe, parked in the driveway and registered to Appellant. Officer McCusker observed a pistol in the center console and informed Patrolman First Class ("PFC") Brian Gilmore, who was the acting supervisor.

The officers then cleared the scene and left the property. Neither Appellant's wife nor his son wished to press charges. After leaving Appellant's house, PFC Gilmore drove approximately 1,000 yards to a church parking lot, which was not in view of Appellant's residence. While parked, he investigated the status of Appellant's license to carry a concealed firearm, which he determined had expired in October 2019. Soon thereafter, at approximately 9:02 AM, PFC Gilmore saw Appellant drive by the parking lot in the Tahoe.

PFC Gilmore followed Appellant to his place of business and activated the patrol car's lights and siren as Appellant parked behind the building. With weapons drawn, officers instructed Appellant to exit the car and handcuffed him. PFC Gilmore then observed a firearm in the vehicle's center console, where Officer McCusker had seen it when the car was parked at the residence.

After removing the firearm from the vehicle, PFC Gilmore determined that it was loaded.

The Commonwealth charged Appellant with Firearms Not to be Carried Without a License, which applies to "[a] person who is otherwise eligible to possess a valid license under this chapter but carries a firearm in any vehicle . . .without a valid and lawfully issued license[.]"[2]

Appellant filed an Omnibus Pretrial Motion, on May 3, 2021, in which he sought, *inter alia*, to suppress the firearm. The court held a suppression hearing on July 26, 2021, at which PFC Gilmore and Officer McCusker testified and the Commonwealth presented body and dash camera video. On September 22, 2021, the trial court denied Appellant's motion to suppress the firearm. On January 24, 2022, the trial court conducted a stipulated bench trial and found Appellant guilty of Firearms Not to Be Carried Without a License. The court sentenced him to two years of probation.

On February 14, 2022, Appellant filed both his notice of appeal and his Pa.R.A.P. 1925(b) Statement of Matters Complained of on Appeal.[3] The trial court entered an order on June 24, 2022, providing findings of fact and

_____

[2] 18 Pa.C.S. § 6106(a)(2).

[3] Appellant's Notice of Appeal claims to appeal from the order denying suppression. However, the appeal properly lies from the judgment of sentence. **Commonwealth v. Shamberger**, 788 A.2d 408, 410 n.2 (Pa. Super. 2001) We have corrected the case caption accordingly.

conclusions of law related to its denial of Appellant's Omnibus Motion to Suppress. Several days later, the court filed its Rule 1925(a) Opinion.

Before this Court, Appellant raises the following question:

Did police officers have probable cause to believe that the defendant was in possession of a firearm inside his vehicle prior to placing him under arrest?

Appellant's Br. at 2.

**A.**

This Court's review of a trial court's denial of suppression "is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." ***Commonwealth v. Yandamuri***, 159 A.3d 503, 516 (Pa. 2017). While "[w]e are bound by the suppression court's factual findings" if supported by the record, we review questions of law *de novo*. ***Id.*** In reviewing the denial of suppression, "we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted. Our scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial." ***Id.*** (internal citation omitted).

We reiterate that "[b]oth the Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution guarantee individuals freedom from unreasonable searches and seizures." ***Commonwealth v. McMahon***, 280 A.3d 1069, 1071 (Pa. Super. 2022) (citation omitted). A warrant stating probable cause for a search or seizure is generally required unless one of the "few clearly delineated exceptions"

applies, such as the automobile exception or the plain view exception. *Id.* at 1072.

"Probable cause exists where the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed." *Commonwealth v. Clark*, 735 A.2d 1248, 1252 (Pa. 1999) (citation omitted). "Probable cause does not require certainty, but rather exists when criminality is one reasonable inference, not necessarily even the most reasonable inference." *Commonwealth v. Brogdon*, 220 A.3d 592, 599 (Pa. Super. 2019) (citation omitted). In considering probable cause, we look to the totality of the circumstances. *Id.* Where officers are working in a team and one officer does not hold all the information necessary to establish probable cause, courts may consider the knowledge of other officers in the team, especially where the officers have communicated the relevant information. *Commonwealth v. Yong*, 177 A.3d 876, 888–90 (Pa. 2018).[4]

_____

[4] The Supreme Court explained:

> Pennsylvania adheres to the vertical approach of the collective knowledge doctrine, which instructs that an officer with the requisite level of suspicion may direct another officer to act in his or her stead. However, where, as here, the arresting officer does not have the requisite knowledge and was not directed to so act, we hold the seizure is still constitutional where the investigating officer with probable cause or reasonable suspicion was working with the officer and would have inevitably and imminently ordered that the seizure be effectuated.

*Yong*, 177 A.3d at 889-90.

Turning to the plain view doctrine, courts allow "the admission of evidence seized without a warrant when: (1) an officer views the object from a lawful vantage point; (2) it is immediately apparent to him that the object is incriminating; and (3) the officer has a lawful right of access to the object." ***Commonwealth v. Davis***, 287 A.3d 467, 471 (Pa. Super. 2022) (emphasis omitted). As applied in cases involving vehicles, this Court opined that "where police officers observe incriminating-looking contraband in plain view in a vehicle from a lawful vantage-point, the lack of advance notice and opportunity to obtain a warrant provides the officers with a lawful right of access to seize the object in question." ***McMahon***, 280 A.3d at 1074 (citation omitted).[5]

## B.

Appellant challenges the court's denial of his suppression motion, asserting that the officers did not have probable cause to stop him after he drove past PFC Gilmore in the church parking lot, claiming that the officers had only "an inarticulate hunch" that the firearm was still in his vehicle. Appellant's Br. at 9 (quoting ***Commonwealth v. Hayward***, 756 A.2d 23, 29 (Pa. Super 2000)). Appellant asserts that "[p]rior to pulling [him] over, police officers did not observe [him] committing any motor vehicle code violations,

---

[5] The Pennsylvania Supreme Court recently held that the Pennsylvania Constitution demands that "warrantless vehicle searches require both probable cause and exigent circumstances[.]" ***Commonwealth v. Alexander***, 243 A.3d 177, 207 (Pa. 2020). This Court, however, held that ***Alexander*** did not apply to cases involving the plain view exception. ***McMahon***, 280 A.3d at 1073.

nor did they know whether [he] had removed the pistol from his vehicle after the protective sweep of his residence had been cleared." *Id.* at 2.[6] After review, we conclude that the court did not err in denying suppression.

Upon considering the totality of the circumstances, the suppression court concluded that the officers had probable cause to conclude that Appellant "was engaged in the illegal act of concealing [a] firearm in his vehicle off of his property." Tr. Ct. Order, 6/24/22, at 4. The court explained its conclusion:

> [T]here was a strong probability of criminal activity for several reasons: (1) Officer McCusker is well trained and knows how to spot firearms; (2) [h]e found out [that Appellant] had his license to carry concealed firearms revoked; (3) [h]e found that the car that contained the firearm was registered to [Appellant]; and (4) observed [Appellant's] conversation with his wife in which he revealed he knew the gun was in the car.

_____

[6] Appellant tangentially questions Officer McCusker's authority to look into the Tahoe parked in the driveway, citing to *Commonwealth v. Chesney*, 196 A.3d 253 (Pa. Super. 2018). Appellant's Br. at 9-10. In *Chesney*, officers searched a vehicle after viewing a drug container through the vehicle's window, which was parked within the curtilage of a house. This Court reversed the denial of suppression, concluding that the officers were not in a lawful vantage point because the trial court had invalidated the warrant that initially brought the officers to the residence. *Chesney*, 196 A.3d at 260. Appellant's reliance on *Chesney* is inapt because the instant case does not involve a defective warrant but, instead, an unchallenged protective sweep of the property based upon a report of a male with a firearm.

*Id.* at 4.[7]  Based upon these facts, the court concluded that PFC Gilmore "had probable cause to stop [Appellant]."[8]  *Id.*

After reviewing the record before the suppression court, we agree that PFC Gilmore could reasonably infer that Appellant was carrying an unlicensed firearm in a vehicle, in violation of Section 6106(a)(2).  Specifically, Officer McCusker observed a firearm in plain view in Appellant's vehicle and informed PFC Gilmore, who then determined that Appellant's firearm license had expired.  Within minutes of making that determination, PFC Gilmore observed Appellant drive past him in the same vehicle.  Thus, PFC Gilmore had probable cause to stop Appellant.  Accordingly, we conclude that the court did not err in denying suppression.

Judgment of sentence affirmed.

*Judgment Entered.*

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/18/2023

---

[7] While the court misstated that Officer McCusker rather than PFC Gilmore determined that Appellant's license had expired, this discrepancy does not impact our analysis.

[8] The court additionally concluded that PFC Gilmore had probable cause to arrest Appellant upon observing the firearm in the vehicle in plain view and after determining that the firearm was loaded.  Tr. Ct. Order  at 4-5.